Henry A. **CHILDS** and Carol M. Childs, Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 17422.

United States Court of Appeals Third Circuit.

Argued Feb. 6, 1969.

Decided March 18, 1969.

John H. Falsey, Lewis, MacDonald & Varian, New York City, for appellant.

Jeanine Jacobs, Department of Justice, Tax Division, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Stuart A. Smith, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before KALODNER, GANEY and SEITZ, Circuit Judges.

## OPINION OF THE COURT

GANEY, Circuit Judge.

The question here involved is whether the appellant, Henry A. Childs, who purchased certain shares of stock in Yankee Productions, Inc., hereinafter referred to as "Yankee", in the years 1960 and 1961, which became worthless in the year 1963, was entitled to a deduction therefor in his return as a capital loss, or whether it was to be treated as ordinary income. The Tax Court held that the deduction should be treated as a capital loss.

Jurisdiction of this court is invoked under Section 7482 of the Internal Revenue Code of 1954, and the appeal involves deficiencies in federal income tax for the year 1960 in the amount of $5,669.83, and for the year 1961 in the amount of $4,283.00, resulting from the Commissioner's disallowance of claimed loss carrybacks from 1963.

The taxpayer purchased 15 shares of stock of "Yankee" for $15,000.00, pursuant to a resolution in the minutes adopted at a special meeting of the board of directors of "Yankee" held on October 21, 1960. The stock was paid for on the date of purchase and the minutes of that meeting, in pertinent part, recite as follows:

"Mr. Risola stated that the purpose of the meeting was to consider the issuance of fifteen shares of stock to Henry Childs for the sum of $15,000.00 to be paid in cash. After some discussion, it was unanimously agreed to consumate [sic] the sale.

"There being no further business, the meeting was adjourned."

The resolution of the stock purchase on January 4, 1961, contained almost identical language for the purchase of 100 shares.

On March 28, 1961, at a special meeting of the stockholders of "Yankee", stock was purchased by the appellant in the amount of $19,000.00, 500 shares on March 28, 1961, and 300 shares on April 12, 1961, pursuant to the following resolution contained in the corporation's minutes:

"Greg Michie pointed out that the method for raising additional capital discussed at the last special meeting on March 20, 1961, had not materialized. After much discussion, on past expenditures and possible methods of raising additional capital, it was decided to issue the additional 300 shares to Henry Childs for $3,000.00 to be paid in cash, and to obtain an additional issue of 500 shares of common stock of the par value of $100.00 and sell same to Mr. Childs for $16,000.00. A motion to do the same was duly made and carried.

"Mr. Christopher Risola tendered his resignation as president, which was accepted.

"A motion was then duly made and carried that the office of assistant treasurer be abolished. After discussion, another motion was duly made and carried that either Mr. Childs or Mr. Michie be authorized signers of all checks of the corporation.

"There being no further business, the same was, on motion, duly adjourned."

Section 1244 of the Internal Revenue Code of 1954, was amended by Section 202(b) of the Small Business Tax Revision Act of 1958, P.L. 85–866, 72 Stat. 1606, 1676, entitled Losses on Small Business Stock, and provides as follows:

"(c) *Section 1244 Stock Defined.*—

(1) In general.—For purposes of this section, the term 'section 1244 stock' means common stock in a domestic corporation if—

(A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan,

(B) at the time such plan was adopted, such corporation was a small business corporation,

(C) at the time such plan was adopted, no portion of a prior offering was outstanding,

(D) such stock was issued by such corporation, pursuant to such plan, for money or other property (other than stock and securities) and

(E) such corporation, during the period of its 5 most recent taxable years ending before the date the loss on such stock is sustained * * * derived more than 50 percent of its aggregate gross receipts from sources other than royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities * * *."

Federal Tax Regulations, 1961, Section 1.1244(c)–1(c), Section 1244 Stock Defined, provides:

(c) *Written plan.* (1) The common stock must be issued pursuant to a written plan adopted by the corporation after June 30, 1958, *to offer only such stock during a period specified in the plan* ending not later than two years after the date the plan is adopted. The two-year requirement referred to in the preceding sentence will be met *if the period specified in the plan* is based upon the date when, under the rules or regulations of a Government agency relating to the issuance of the stock, the stock may lawfully be sold, and it is clear that such period will end, and in fact it does end, within two years after the plan is adopted. The plan must specifically state, in terms of dollars, the maximum amount to be received by the corporation in consideration for the stock to

be issued pursuant thereto. See § 1.1244(c)–2 for the limitation on the amount that may be received by the corporation under the plan. For purposes of section 1244, an increase in the basis of outstanding stock as a result of a contribution to capital is not an issuance of stock." (Emphasis supplied.) Adopted 10/8/60, before appellant's purchase of stock.

Here, the resolution of the board of directors, as well as the minutes of the stockholders' meeting, were in writing and the Tax Court properly held that the resolution and the minutes constituted no offering of a plan. To construe the writing in both known instances as an offer and a plan when it was, in fact, merely the acceptance of an offer by the corporation of the appellant, Mr. Childs, would be a complete distortion of fact. Here, there was no more than a general acceptance of Mr. Childs, the appellant's offer to buy the respective shares of stock as in the case of an ordinary purchase and sale and, in no wise, envisioned "Section 1244 stock". Furthermore, there was no time limit set in the resolution of the board of directors nor in the minutes of the stockholders' meeting for its issuance, as is indicated above, as a requirement in Section 1244(c)–1(c), and to say that each transaction, since it was immediately concluded, was done within a two-year period and complied with the quoted section above mentioned, is again stretching the language of the section beyond its intendment.

The appellee relies on Eger v. Commissioner of Internal Revenue, 2 Cir., 393 F.2d 243, which has a factual situation somewhat similar to the present one, but, in that instance, the resolution made a specific reference to "Section 1244 stock", which is totally absent in either the resolution of the board of directors or the stockholders' minutes in the instant case.

The Tax Court here was simply following the rule it had laid down previously in Shapiro v. Commissioner, 25 T.C.M. 654 (1966), in which there was apparently no proof that the stockholder-director had "Section 1244 stock" in mind, or even knew of its requirement, and, also, in Warner v. Commissioner, 48 T.C.M. 49 (1967), where the same factual situation obtained in that there was no reference, as here, to Section 1244 in the minutes of the corporation. Likewise, to the same effect, is Spiegel v. Commissioner, 49 T.C.M. 527, filed February 23, 1968, where the deduction of ordinary income was denied for lack of a regular plan which, in that instance, contained no corporate minutes referring to the adoption of a Section 1244 plan. See also Bruce v. United States, 279 F.Supp. 686, 687, wherein the court stated at p. 690: "Plaintiff, therefore, is not entitled to Section 1244 treatment on any of his stock in HLB. As to the first three acquisitions at least, this result is perhaps unfortunate. Apparently it was this sort of investment which Congress intended to encourage by enacting Section 1244. However, when such a tax benefit is provided, it is encumbent upon those seeking to take advantage of it to satisfy all the specific prerequisites necessary to bring themselves within the coverage of the statute. In this the plaintiff has failed." The position here taken was adopted by the Fifth Circuit on February 21, 1969, in Spillers v. Commissioner, 69–1 U.S.T.C. par. 9236.

As we have indicated, there is nothing in the resolution of the board of directors of "Yankee", nor in the minutes of the stockholders' meeting, which would differentiate these resolutions and minutes from the ordinary purchase of stock by a buyer and seller. Here, if any offer was made, it was made on behalf of the appellant, Mr. Childs, and the acceptance was by the corporation and the respective resolutions and minutes merely set the same forth. Furthermore, since no time limit of a two-year period was inserted in any wise to distinguish it from the ordinary offer and

sale of stock, this case can be distinguished from Eger v. Commissioner of Internal Revenue, supra.

Accordingly, the decision of the Tax Court will be affirmed.