**Elmer W. ANDERSON and Margaret P. Anderson, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 277–70.**

United States Court of Appeals, Tenth Circuit.

Jan. 21, 1971.

357

Paul R. Hodgson, Tulsa, Okl. (James O. Ellison, Tulsa, Okl., with him on the brief), for appellants.

Ann E. Belanger, Dept. of Justice, Wash., D. C. (Johnnie M. Walters, Asst. Atty. Gen., and Lee A. Jackson and Elmer J. Kelsey, Dept. of Justice, Wash., D. C., on the brief), for appellee.

Before PICKETT, HILL and SETH, Circuit Judges.

PICKETT, Circuit Judge.

Elmer W. Anderson and his wife, Margaret P. Anderson, brought this action for refund of federal income taxes for the years 1961 and 1964. The case was submitted to the trial court on stipulated facts presenting the sole question of whether a loss incurred from the sale of corporate stock belonging to the taxpayers should be treated as a loss from the sale of a capital asset, or as an ordinary loss under the provisions of 26 U. S.C. § 1244 of the Internal Revenue Act of 1954.

El Mar Men's, Inc. was duly incorporated under the laws of the State of Oklahoma on December 29, 1960, authorizing the issuance of 1,500 shares of capital stock of the par value of $100 per share. The Articles of Incorporation provided that "(t)he amount of stated capital with which it will begin business is $125,000 which has been fully paid in." An affidavit of two of the incorporators attached to the Articles of Incorporation when filed, certifies that the aforesaid amount had been fully paid. 1,250 shares were thereupon issued to Elmer W. Anderson. On February 7, 1961, an additional 50 shares were issued to Anderson. In 1964 Anderson sold the 1,300 shares of stock for $37,195.30. In their joint income tax return for that year the Andersons claimed a loss on the sale of the stock to the extent of $50,000, pursuant to § 1244. The Commissioner determined that the stock purchases did not qualify as a § 1244 transaction and disallowed the de-

duction as an ordinary loss. The taxpayers paid the deficiency and sued for a refund. The trial court held that the purchase was not one of "section 1244 stock," and dismissed the action.

The pertinent provisions of § 1244 are:[1]

"(a) General rule.—In the case of an individual, a loss on section 1244 stock issued to such individual or to a partnership which would (but for this section) be treated as a loss from the sale or exchange of a capital asset shall, to the extent provided in this section, be treated as a loss from the sale or exchange of an asset which is not a capital asset.

"(b) Maximum amount for any taxable year.—For any taxable year the aggregate amount treated by the taxpayer by reason of this section as a loss from the sale or exchange of an asset which is not a capital asset shall not exceed—

"(1) $25,000, or

"(2) $50,000, in the case of a husband and wife filing a joint return for such year under section 6013.

"(c) Section 1244 stock defined.—

"(1) In general.—For the purposes of this section, the term 'section 1244 stock' means common stock in a domestic corporation if—

"(A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan,

"(B) at the time such plan was adopted, such corporation was a small business corporation,

"(C) at the time such plan was adopted, no portion of a prior offering was outstanding,

"(D) such stock was issued by such corporation pursuant to such plan, for money or other property (other than stock and securities), * * *"

The parties stipulated that the stock purchases by Anderson in El Mar Men's Inc. satisfied all of the requirements of § 1244 except those relating to the adoption of a plan as designated in § 1244(c) (1) (A). The taxpayers argue that the Articles of Incorporation with reference to Anderson's original purchase of 1,250 shares of stock for $125,000 was the complete plan, that it was in writing, and was to be performed within the period of two years. In short, it is said that the plan is immediate and completed with the filing of the Articles of Incorporation and the payment of $125,-000 for the 1,250 shares of stock.

1. Applicable Treasury Regulations as authorized by the statute to implement § 1244 are:

"§ 1.1244(c)–1 Section 1244 stock defined.

"(a) In general. In order that stock may qualify as section 1244 stock the requirements described in paragraphs (b) through (h) of this section must be satisfied. * * *

* * * * *

"(c) Written plan. (1) The common stock must be issued pursuant to a written plan adopted by the corporation after June 30, 1958, to offer only such stock during a period specified in the plan ending not later than two years after the date the plan is adopted. The two-year requirement referred to in the preceding sentence will be met if the period specified in the plan is based upon the date when, under the rules or regulations of a Government agency relating to the issuance of the stock, the stock may lawfully be sold, and it is clear that such period will end, and in fact it does end, within two years after the plan is adopted. The plan must specifically state, in terms of dollars, the maximum amount to be received by the corporation in consideration for the stock to be issued pursuant thereto. See § 1.1244(c)–2 for the limitation on the amount that may be received by the corporation under the plan. For purposes of section 1244, an increase in the basis of outstanding stock as a result of a contribution to capital is not an issuance of stock."

Section 1244 was enacted in 1958 to encourage the financing of "small business corporations" by providing for beneficial income tax treatment in case of a loss on stock investments in corporations which qualified under § 1244. The statute and the regulations adopted pursuant thereto provide that stock acquired from a "small business" corporation shall be considered "section 1244 stock" only if the corporation has adopted a written plan to offer such stock during a specified period ending two years from the date of the adoption of the plan, and that the stock must be issued during such period pursuant to the plan. It has been held that where corporate minutes and resolutions disclose a plan which meets the requirements of the statute and regulations, it is adequate. Eger v. C.I.R., 393 F.2d 243 (2d Cir. 1968). In the *Eger* case, the corporate records, including minutes of corporate meetings, showed that the stock issue was in conformity with and for the purpose of complying with the requirements of § 1244, and that the amount and period of time actually involved were within the statutory limitations. In the case at bar, no specific plan was referred to in the corporate papers. No reference was made to the disposition of the remaining 250 shares of stock, 50 shares of which were later sold to Anderson, and no limitation was placed upon the issuance of the remaining shares. The stipulated facts in the case disclose that when the corporation was organized no plan as contemplated by the statute was considered, nor was any intended. In Godart v. C.I.R., 425 F.2d 633, 638 (2d Cir. 1970), the court said that to be effective, "there must be some substantially contemporary objective evidence that the plan was adopted with § 1244 in view." See also Bruce v. United States, 409 F.2d 1317 (5th Cir. 1969), affirming D.C., 279 F.Supp. 686; Childs v. C.I.R., 408 F.2d 531 (3d Cir. 1969); Spillers v. C.I.R., 407 F.2d 530 (5th Cir. 1969).

Affirmed.