GEORGE H. FRAHM and ELIZABETH A. FRAHM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Frahm v. Commissioner
Docket No. 668-71
United States Tax Court
T.C. Memo 1974-138; 1974 Tax Ct. Memo LEXIS 181; 33 T.C.M. (CCH) 622; T.C.M. (RIA) 74138; May 30, 1974, Filed. *181 Petitioner organized a corporation, the minutes of which authorized the issuance of stock pursuant to a permit granted by the California Commissioner of Corporations. The permit as granted terminated within one year, but could be revoked, suspended, or renewed at anytime. Held: The minutes of the corporation together with the permit did not constitute a "plan" within the meaning of section 1244(c) (1) (A), and therefore petitioner must recognize a capital loss on the sale of his stock in the corporation. John H. Rickey, 54 T.C. 680 (1970), on appeal (C.A. 9, Nov. 13, 1970) followed. Held further: Amount of petitioner's loss on the sale of business property determined. Richard A. Corleto, for *183 the petitioners. Allan D. Hill, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined a deficiency in petitioners' federal income tax as follows: Year
Deficiency 1964
$11,401.61
1967
1,632.62
Respondent has conceded that the petitioners did not realize a gain of $582 in 1967 upon the sale of certain property. The issues left for our determination are: (1) Whether the petitioners are entitled to an ordinary loss deduction in 1967 of $48,500 on the sale of stock of Frahm Oldsmobile, Inc. under the provisions of section 1244, Internal Revenue Code of 1954. [1]
(2) Whether petitioners are entitled to a loss in 1967 in the amount of $5,418 on the sale of certain real property which had previously been converted from personal to business use. FINDINGS OF FACT Most of the facts have been stipulated and are so found. The stipulation of facts, together with attached exhibits, are incorporated herein by this reference. George H. Frahm (hereinafter referred to as petitioner) and his wife *184 Elizabeth A. Frahm filed a joint federal income tax return for the calendar year 1964 with the district director of internal revenue at San Francisco, California. They filed a joint federal income tax return for the calendar year 1967 with the district director of internal revenue at Los Angeles, California. Both returns were prepared using the cash basis method of accounting. At the time the petition herein was filed, the petitioners resided at Downey, California. Petitioner, Ole Legvold, and Lee T. Legvold incorporated under the laws of the State of California, a corporation known as Frahm Oldsmobile, Inc. (hereinafter Frahm Oldsmobile). The articles of incorporation authorized the issuance of twenty thousand (20,000) shares of capital stock of the corporation, each share having a par value of $10. The articles of incorporation provide for only one class of stock. On November 1, 1965, petitioner, Ole and Lee, who constituted the board of directors, as well as the incorporators, of the corporation, held the first meeting of the board at Encino, California. During this meeting the following resolutions were adopted: RESOLVED: That the President of this Corporation be, *185 and he is hereby authorized and directed to prepare, verify, and file, on behalf of this Corporation an ["]Application to the California Commissioner of Corporations for a Permit authorizing this Corporation to issue and sell 8,000 of its $10.00 par value capital stock to Ole Legvold for a consideration of $10.00 per share constituting a total consideration of $80,000.00 and 5,000 shares of its $10.00 par value capital stock to George H. Frahm for a consideration of $10.00 per share constituting a total consideration of $50,000.00. RESOLVED FURTHER: That upon the issuance of a Permit by the California Commissioner of Corporations pursuant to such application, or any amendment thereof, the President and the Secretary of this Corporation may, and they are hereby authorized and directed to issue and sell the shares of stock in this Corporation authorized to be issued and sold by said permit for the consideration stated and in compliance with all of the terms and conditions of said permit. On November 12, 1965 the board of directors adopted the following resolution: RESOLVED: That the fair value as of October 31, 1965 of the assets of the business known as L & L Oldsmobile is *186 determined to be $230,400.61 and that the fair value of the net equity in said business as shown on the Balance Sheet dated October 31, 1965, a copy of which is filed with this resolution, as determined by the assets referred to above less the liabilities shown on said Balance Sheet is determined to be $100,000.00. On November 19, 1965, an "Application for Permit to Issue Securities" was filed with the Division of Corporations, Department of Investments of the State of California for a permit authorizing Frahm Oldsmobile to sell and issue 13,000 shares of its $10 par value stock. Five thousand (5,000) of these shares were to be issued to petitioner in consideration for her interest in L & L Oldsmobile, a partnership, which was valued at $50,000. On November 29, 1965, a permit was issued by the Department of Investments, Division of Corporations of the State of California, authorizing the sale and issuance of 13,000 shares of $10 par value capital stock. The permit contained the following condition: (b) That unless revoked or suspended, or renewed upon application filed on or before the date of expiration specified in this condition, all authority to sell securities under paragraph *187 1 of this permit shall terminate and expire on November 28, 1966. All other paragraphs and/or conditions of this permit, if any, shall remain in full force and effect until revoked, suspended or amended by order of the Commissioner. On November 30, 1965, the petitioner and Ole executed a document entitled Bill of Sale wherein they purported to sell their interest in the assets of L & L Oldsmobile to Frahm Oldsmobile in consideration of $100,000. The consideration was paid by the issuance of 10,000 shares of stock of the corporation to the petitioner and Ole with an effective date of November 1, 1965.Petitioner had an adjusted basis of $50,000 in the shares of Frahm Oldsmobile owned by him. On or about December 29, 1967, petitioner sold 2,500 shares of stock of Frahm Oldsmobile to Robert Hyson and the remaining 2,500 shares owned by him to Chester A. Price, in each instance for $750. On their joint federal income tax return for 1967, the petitioners claimed an ordinary loss of $48,500, based on the sale of petitioners' stock of Frahm Oldsmobile. On April 11, 1968, the petitioners filed an application for tentative carryback adjustment alleging a net operating loss of $38,061.52 *188 in 1967 and requesting a carryback of this loss to petitioners' 1964 tax year. On July 18, 1968 petitioners' application was tentatively allowed and petitioners received a refund of taxes paid in 1964 of $11,401.61. In July of 1963 the petitioners purchased real property located at 5631 North Farris Avenue (hereinafter Farris property), Fresno, California, to be used as a personal residence. The purchase price of the Farris property was $51,040. In August 1965 the Farris property was converted from personal residence to rental income property. Depreciation taken on the property while being rented amounted to $5,622. The tenant of the Farris property did extensive damage to the property during his period of occupancy. In March, 1967 the Farris property was sold for $40,000. OPINION Petitioner, with others, organized Frahm Oldsmobile, Inc. and received common stock valued at $50,000 in exchange for his interest in certain assets. In 1967 petitioner sold the common stock for $1,500 and realized a loss of $48,500. The first issue we must decide is whether the petitioner is entitled to ordinary loss treatment on the sale of his stock. The proper characterization of the *189 loss hinges on whether the petitioner's stock constituted "section 1244 stock." Normally losses incurred on the sale of capital assets are capital losses and are deductible only to the extent of a taxpayer's capital gains plus $1,000 of his ordinary income. Sections 165(f), 1211, and 1212. Section 1244 provides an exception to the general rule in the case of "section 1244 stock." [2]
Section 1244 stock is defined, in part, as follows: (c) Section 1244 Stock Defined. - (1) In General. - For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if - (A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified *190 in the plan. The regulations promulgated under the express mandate of section 1244(e) provide, in part, as follows: Section 1.1244(c)-1. Section 1244 stock defined. (a) In general. In order that stock may qualify as section 1244 stock the requirements described in paragraphs (b) through (h) of this section must be satisfied. * * * * * * (c) Written plan. (1) The common stock must be issued pursuant to a written plan adopted by the corporation after June 30, 1958, to offer only such stock during a period specified in the plan ending not later than two years after the date the plan is adopted. The two-year requirement referred to in the preceding sentence will be met if the period specified in the plan is based upon the date when, under the rules or regulations of a Government agency relating to the issuance of the stock, the stock may lawfully be sold, and it is clear that such period will end, and in fact it does end, within two years after the plan is adopted. The plan must specifically state, in terms of dollars, the maximum amount to be received by the corporation in consideration for the stock to be issued pursuant thereto. It is petitioner's contention that *191 the corporate minutes of Frahm Oldsmobile were sufficient to qualify as a plan within the meaning of section 1244(c) (1) (A). The respondent argues conversely that such a plan did not exist. The minutes of a corporation have been held to constitute a plan which satisfies section 1244. Eger v. Commissioner, 393 F.2d 243 (C.A. 2, 1968), reversing a Memorandum Decision of this Court. The minutes of the board of directors meeting of Frahm Oldsmobile taking place on November 1, 1965 stated in pertinent part: RESOLVED: That the President of this Corporation be, and he is hereby authorized and directed to prepare, verify, and file, on behalf of this Corporation an ["]Application to the California Commissioner of Corporations for a Permit authorizing this Corporation to issue and sell 8,000 of its $10.00 par value capital stock to Ole Legvold for a consideration of $10.00 per share constituting a total consideration of $80,000.00 and 5,000 shares of its $10.00 par value capital stock to George H. Frahm for a consideration of $10.00 per share constituting a total consideration of $50,000.00. RESOLVED FURTHER: That upon the issuance of a Permit by the California Commissioner *192 of Corporations pursuant to such application, or any amendment thereof, the President and the Secretary of this Corporation may, and they are hereby authorized and directed to issue and sell the shares of stock in this Corporation authorized to be issued and sold by said permit for the consideration stated and in complaince with all of the terms and conditions of said permit. The permit to issue stock contained authority to sell the shares for a period of 1 year "unless revoked or suspended, or renewed." Where the minutes of a corporation do not specify a time limit on the sale of stock, a plan within the meaning of section 1244(c) (1) (A) may not exist. Anderson v. United States, 436 F.2d 356 (C.A. 10, 1971); Spillers v. Commissioner, 407 F.2d 530 (C.A. 5, 1969), affirming a Memorandum Decision of this Court; William Siebert, Sr., 53 T.C. 1 (1969). The petitioner, apparently relying on section 1.1244(c)-1(c), Income Tax Regs. states that the minutes in issue required compliance with the permit issued by the California Commission of Corporations. This was not sufficient to constitute a "plan". In John H. Rickey, 54 T.C. 680 (1970), *193 on appeal (C.A. 9, Nov. 13, 1970), with precisely the same facts as the instant case, this Court found that the renewal provision contained in the permit provided an unspecific time for the sale of stock and therefore did not comply with the statute. John H. Rickey, supra at 701. With little difficulty the petitioner and other directors of the corporation could have extended the sale well beyond the 2 year statutory limit. Moreover, the fact that the stock was sold during a period less than 2 years from the date the sales were authorized is of no consequence in determining whether the plan had a specific time limitation under 2 years. Childs v. Commissioner, 408 F.2d 531 (C.A. 3, 1969), affirming a Memorandum Decision of this Court; Warner v. Commissioner, 401 F.2d 162 (C.A. 9, 1968), affg. 48 T.C. 49 (1967). Lastly, there is no evidence which shows us that the corporation ever contemplated issuing stock in conformity with section 1244. While ritualistic reference to section 1244 is not essential to an otherwise valid plan, there must be some objective evidence that the plan was adopted with section 1244 in view. Godart v. Commissioner, 425 F.2d 633, 637 *194 (C.A. 2, 1970), affg. 51 T.C. 937 (1969); John H. Rickey, supra at 700. We therefore hold that petitioner's stock did not constitute "section 1244 stock," and that his $48,500 loss on the sale of such stock is properly characterized as a capital loss. The second issue for our determination is whether the petitioners are entitled to a loss in the amount of $5,418 on the sale of property which had formerly been converted from personal to business use. To determine the amount of the loss, we must know the petitioners' adjusted basis. Section 165(b). Where property is converted from personal to business use, the basis is the lesser of the fair market value at the time of the conversion or cost. Heiner v. Tindle, 276 U.S. 582 (1928); section 1.165-9(b) (2), Income Tax Regs.
Petitioner purchased his home in July, 1963 at a cost of $51,040. In August 1965 the property was converted to business use. In March 1967 the home was sold for $40,000. During the period of business use depreciation was taken in the amount of $5,622. The one unknown for our formula is the fair market value at the time the property was converted to business use. Respondent *195 prorated the total depreciation, based on the sales price, over the petitioners' period of ownership and determined the fair market value at conversion to be not more than $45,040.After deducting the depreciation the petitioner was allowed, the respondent determined that the petitioner realized a gain of $582. [3]
Petitioner has testified that the property depreciated only after a tenant had abused the property. Further, according to petitioner, he was in need of money and was forced to sell quickly at a price below the house's true fair market value. Petitioner's testimony was quite convincing to us and we believe that, on the date of the conversion to business property, the fair market value of the home was at least equal to petitioner's cost. We therefore hold that he is entitled to deduct the loss suffered on the sale of the property. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954. ↩
2. SEC. 1244. LOSSES ON SMALL BUSINESS STOCK. (a) General Rule. - In the case of an individual, a loss on section 1244↩ stock issued to such individual or to a partnership which would (but for this section) be treated as a loss from the sale or exchange of a capital asset shall, to the extent provided in this section, be treated as a loss from the sale or exchange of an asset which is not a capital asset. 3. Respondent has since conceded that the petitioner did not realize a gain on the sale. ↩