WARREN C. FOX and ANITA G. FOX, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fox v. Commissioner
Docket No. 4872-73.
United States Tax Court
T.C. Memo 1975-64; 1975 Tax Ct. Memo LEXIS 311; 34 T.C.M. (CCH) 348; T.C.M. (RIA) 750064; March 18, 1975, Filed Warren C. Fox, pro se. Robert G. Martinell, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $10,597.58 in petitioners' Federal income tax for 1970 and an addition to the tax under section 6651(a) [1]/ in the amount of $864.99. The issues for decision are as follows: 1. Whether a loss incurred by petitioners as a result of the financial failure of a corporation, Warren Fox Dodge, is deductible under section 1244 as an ordinary loss or under section 1211 as a capital loss; and 2. Whether petitioners are liable for an addition to the tax for 1970 under section 6651(a); more specifically, the issue is whether petitioners' failure to file a timely Federal income tax return for 1970 was due to reasonable cause and not to willful neglect. FINDINGS OF FACT At the time their petition was filed, petitioners Warren C. Fox and Anita G. Fox were legal residents of Hemet, California. For *314 convenience, Warren C. Fox will be referred to herein as petitioner. From 1967 to August 1969, petitioner operated an automobile dealership in Hollywood, California. Before he assumed its management, that dealership, owned principally by Chrysler Corporation, had lost money. Petitioner was able to develop the business into a profitable one. Sometime in 1969, petitioner was offered an opportunity to acquire ownership of an automobile dealership in Upland, California, then being operated by a corporation whose stock was owned by Chrysler Corporation. To acquire this dealership, petitioner had to create a new corporation and was required to invest $100,000 in it with the understanding that Chrysler Credit Corporation would loan $80,000 to the new corporation. Petitioner agreed to the arrangement. On August 18, 1969, the newly created corporation, Warren Fox Dodge, filed its articles of incorporation with the California Secretary of State. The articles recite, among other things, that the primary purpose of the corporation is to engage in the business of selling, purchasing, and servicing automotive vehicles. As to the corporation's stock, the articles provide: IV This corporation *315 is authorized to issue only one class of shares of stock. The total number of shares which the corporation is authorized to issue is twenty-five hundred (2500), each share shall be without par value. V No distinction shall exist between the shares of the corporation or the holders thereof. * * * * * VII This corporation is being formed pursuant to the provisions of Section 1244 of the Internal Revenue Code. The articles, signed by five incorporators (petitioner, Kenneth Adgate, Edwin McAdams, Mike A. Hernandez, and H. Burdette Fredricks), do not set forth a plan pursuant to which the stock was to be offered for sale. The minutes of the first meeting of the incorporators and directors of Warren Fox Dodge, dated August 28, 1969, reflect the adoption of bylaws and the approval of a form of certificate for shares of stock of the corporation. The minutes also state: The Chairman suggested that the meeting consider the authorization of the issuance of shares of stock of the corporation. After some discussion, upon motion made and unanimously carried, the following was adopted: RESOLVED: That the President and the Secretary of this corporation *316 be, and they are hereby authorized and directed to prepare, or cause to be prepared, verified and filed, or cause to be filed on behalf of this corporation, an Application to the California Commissioner of Corporations for a Permit to Issue and Sell its stock. * * * * * The Chairman announced that the corporation had elected to be formed pursuant to the provisions of 1244 of the Internal Revenue Code. Article IX of the bylaws of Warren Fox Dodge, adopted at the meeting of August 28, 1969, is as follows: This corporation is being formed pursuant to the provisions of Section 1244 of the Internal Revenue Code. Warren Fox Dodge began doing business in September 1969. Its three shareholders contributed a total of approximately $100,000 toward the capital. Petitioner invested $72,710, and the other two shareholders contributed approximately $28,000. These amounts were invested during September, October, and November, 1969. In addition, Chrysler Credit Corporation advanced $80,000 as a secured loan. The shareholders of Warren Fox Dodge anticipated that the corporation would incur operating losses in the early phases of its operation and therefore instructed *317 their attorney to take the necessary steps to enable them to deduct the operating losses incurred by the corporation. They were confident Warren Fox Dodge would ultimately be financially successful. This confidence was based on forecasts that the economy would quickly recover from the 1969 recession and new car sales would increase. The Federal income tax return of Warren Fox Dodge for 1969 reflects that the corporation incurred an operating loss of $46,665.03. Since the recession lasted longer than anticipated, Warren Fox Dodge was unable to sell enough new cars to make the business profitable. On January 13, 1970, petitioner, as president of Warren Fox Dodge, signed a document entitled "Plan Under Section 1244" which states as follows: THIS PLAN made this 13th day of January, 1970, pursuant to the provisions of Section 1244 of the Internal Revenue Code as follows: 1. Corporation is a California Corporation which has been formed pursuant to Section 1244 of the Internal Revenue Code as set out in the Articles of Incorporation of the Corporation. 2. This plan shall be submitted to the Board of Directors for approval and when approved *318 the Officers are directed to issue said securities pursuant to Section 1244 of the Internal Revenue Code. 3. In the event the corporation is required to liquidate then all assets will be liquidated and the proceeds distributed as follows: (a) All taxes and governmental liabilities shall first be paid. (b) All secured creditors shall be paid on a percentage basis depending upon the assets after liquidation. (c) If any assets remain after secured creditors have been paid then unsecured creditors shall be paid on a percentage basis of said assets. (d) In the event there are any assets remaining after (a) (b) and (c) above, then the assets shall be distributed to the shareholders in their percentage of shareholder's interest in the corporation. 4. This Plan is made pursuant to an agreement of the first incorporators herein and shall be effective when approved by the Board of Directors. Dated the year and date first written above. The minutes of a meeting of the board of directors on January 14, 1970, contain the following: The Chairman then announced that the primary purpose of the meeting was to consider an authorized issuance of stock in the corporation *319 and to file the necessary documents with the Corporation Commissioner of the State of California. The Chairman further announced that the corporation was set up under Section 1244 of the Internal Revenue Code and that the Articles of Incorporation and the Minutes of the First Meeting of the Incorporators and Members of the Board of Directors so reflects [sic]. After a thorough discussion thereon the following resolution was duly adopted: RESOLVED: The officers of the corporation are hereby authorized and directed to cause stock to be issued in the corporation pursuant to a plan in accordance with Section 1244 of the Internal Revenue Code and to file the necessary documents with the California Corporation Commissioner in furtherance thereof. The corporation's deteriorating financial condition caused the shareholders of Warren Fox Dodge great concern in January and February 1970. Petitioner consulted business experts who advised him that if business operations continued, the corporation could expect to suffer losses of at least $5,000 per month. Petitioner closed the business on February 20, 1970, and Chrysler Credit Corporation, *320 as lienholder, liquidated the corporation's assets. The stock of Warren Fox Dodge became worthless in 1970. On December 7, 1970, there was filed with the Commissioner of Corporations of the State of California, pursuant to section 25102(h)(5) of the California Corporations Code, notice of the issuance of the corporation's stock. On December 8, 1970, a stock certificate was issued by Warren Fox Dodge to petitioner covering 550 shares. On a joint Federal income tax return filed by petitioners for 1970, a deduction of $72,710 was claimed for "Loss on stock issued under plan in accordance with I.R.C. Section 1244." In the notice of deficiency, respondent determined that the loss constituted a loss under section 1211 "because it has not been established that the claimed loss qualifies as section 1244 loss." At the time his Federal income tax return was due, petitioner was preoccupied with several business ventures. While he was aware of the April 15, 1971, deadline for filing his Federal income tax return, his personal accountant assured him that he need not worry about filing on time. The accountant reasoned that any penalty imposed would be upon the taxes *321 due, which in petitioner's case was zero, due to the ordinary loss believed to have been sustained. Subsequently, on June 13, 1971, petitioners mailed their Federal income tax return for 1970 to the Internal Revenue Service and it was received on June 17, 1971. No extension of time for filing the return had been requested or granted. In the notice of deficiency, respondent determined that petitioners are liable for an addition to the tax under section 6651(a) for failing to file their 1970 return within the time prescribed by law. Petitioners' failure to timely file their 1970 Federal income tax return was due to willful neglect and not to reasonable cause. OPINION As a general rule, a loss attributable to the worthlessness of the capital stock of a corporation is deductible as a capital loss, but section 1244 provides a limited exception to that general rule. Losses attributable to the worthlessness of stock meeting the requirements of that section, referred to as "section 1244 stock," may be deducted from ordinary income to the extent of $25,000 in the case of an individual return and $50,000 in the case of a joint return under section 6013. Sec. 1244(a) and (b). Section *322 1244(c)(1) sets forth a detailed definition of section 1244 stock, and each requirement of that definition must be met as a condition to the exceptional treatment accorded losses attributable to the worthlessness of section 1244 stock. Three of the requirements relate to the plan to offer the stock, and are as follows: (c) Section 1244 Stock Defined.-- (1) In general.--For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if-- (A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan, (B) at the time such plan was adopted, such corporation was a small business corporation, * * * * * (D) such stock was issued by such corporation, pursuant to such plan, for money or other property (other than stock and securities) * * * The reference in section 1244(c)(1)(A) to provisions which must be "specified in the plan" clearly indicates the plan must be in writing, and the regulations, as well as the legislative history, make this requirement explicit. Sec. 1.1244(c)-1(c), Income Tax Regs.; H. Rept. No. 2198, 85th *323 Cong., 1st Sess. (1959), 1959-2 C.B. 709, 715; Wesley H. Morgan,46 T.C. 878, 889 (1966). Warren Fox Dodge's articles of incorporation filed August 18, 1969, the minutes of a meeting of incorporators and directors dated August 28, 1969, and the bylaws adopted at that meeting, recite that the corporation was formed pursuant to section 1244. However, petitioner testified that the "Plan Under Section 1244," dated January 13, 1970, approved by the board of directors the following day, and quoted in our Findings, was the only plan ever adopted for the purpose of complying with section 1244. In any event, regardless of whether the January 13, 1970, document or all of these documents are regarded as the plan under section 1244, the stock of Warren Fox Dodge does not meet the requirements of that section for at least four reasons. First, the requirement in section 1244(c)(1)(A) that the corporation adopt a plan to offer its stock for a period ending not later than two years after the adoption of the plan was not met. Neither the January 13, 1970, plan nor the other papers, such as the articles of incorporation, the bylaws, or the minutes of the incorporators' *324 meeting, even purport to limit the period within which stock was to be issued. Failure to meet this requirement alone is fatal to petitioner's cause. In Warner v. Commissioner,401 F.2d 162, 165 (C.A. 9, 1968), affirming 48 T.C. 49 (1967), the taxpayer claimed that an oral agreement [2]/ had been reached to limit the offering to a period of two years but the court held the plan defective, stating: In the case at bar, even if we were to hold that an oral plan was sufficient, which we do not, petitioner has still failed to prove that there was a specific parol agreement by the corporation that its stock issue plan would be completed within two years. * * * We can find nothing in the evidence to suggest that such a limitation was specified anywhere, much less that it was "specified in the plan" as is required by section 1244. See also John H. Rickey,54 T.C. 680, 700-702 (1970), affirmed on other grounds 502 F.2d 748 (C.A. 9, 1974); Spillers v. Commissioner,407 F.2d 530, 533 (C.A. 5, 1969), affirming a Memorandum Opinion of this Court; Childs v. Commissioner,408 F.2d 531, 533 *325 (C.A. 3, 1969), affirming a Memorandum Opinion of this Court; William Siebert, Sr.,53 T.C. 1, 7 (1969). Second, the record does not show that petitioner's stock, for which he paid the $72,710, was "issued" by Warren Fox Dodge "pursuant" to the plan adopted on January 14, 1970, as required by section 1244(c)(1)(D). *326 The evidence is unmistakably clear that petitioner made his investment in Warren Fox Dodge during September, October, and November 1969, and the purported section 1244 plan was not adopted until 2 or 3 months later. True, the notice of issuance of stock was not filed with the California Commissioner of Corporations until December 7, 1970, and the stock certificate was not delivered to petitioner until December 8, 1970, long after the corporation had failed. For the purposes of section 1244, however, stock is issued when it is paid for, not when the stock certificate is physically delivered. We so held in Wesley H. Morgan,supra at 890-891, stating: Section 1244 does not define the word "issued" as used therein; we therefore must assume that it was used in its ordinary corporate sense. * * * Generally, the issuance of a certificate is not necessary to constitute one a stockholder. Also, the date of delivery of the certificate is not controlling as to the date a subscriber becomes a stockholder. The stock certificate is merely the documentary evidence of membership in a corporate organization and an attestation of the stockholder's ownership of shares of interest *327 therein. * * * Likewise, when stock is paid for, it is normally considered issued in fact, irrespective of the manual issuance of the certificate. * * * stock certificates are merely secondary evidence of ownership, useful for purposes of transfer; and represent the official declaration by the corporation of what may already appear upon its books. We do not believe that the date of physical issuance of the stock certificate is controlling as to the date of issuance of the stock in ordinary corporate usage and we do not think it was intended to be controlling as to when stock is considered "issued" for purposes of section 1244. See also William O. Hayden,52 T.C. 1112, 1125-1127 (1969). Since petitioner's investment in Warren Fox Dodge preceded the adoption of the plan, his stock was not issued pursuant to such plan as required by section 1244(c)(1)(D). Third, section 1.1244(c)-1(c)(1), Income Tax Regs., provides that "The plan must specifically state, in terms of dollars, the maximum amount to be received by the corporation in consideration for the stock to be issued pursuant thereto." Neither the January 13, 1970, plan nor any of the other documents even purports *328 to meet this requirement. Pierre Godart,51 T.C. 937, 943-944 (1969), affd. 425 F.2d 633 (C.A. 2, 1970); William Siebert, Sr.,supra at 6; Spillers v. Commissioner,supra at 533; Cf. Anderson v. United States,436 F.2d 356, 359 (C.A. 10, 1971). Finally, closely related to the third requirement, section 1244(c)(1)(B) provides that, at the time the plan was adopted, the corporation shall be a "small business corporation." For the purposes of section 1244, a corporation is treated as a small business corporation if, at the time of the adoption of the plan, the sum of "the aggregate amount which may be offered under the plan" plus the aggregate amount received by the corporation for stock, as a contribution to capital, and as paid-in surplus, does not exceed $500,000. Further, "the aggregate amount which may be offered under the plan plus the equity capital of the corporation" may not exceed $1,000,000. Sec. 1244(c)(2); [3]/ sec. 1.1244(c)-2, Income Tax Regs.
*329 The January 13, 1970, plan does not deal with the "aggregate amount which may be offered." True, the evidence shows that petitioner and the other two shareholders orally agreed to, and did, invest approximately $100,000 in Warren Fox Dodge. For his $72,710 investment, petitioner was issued 550 shares. The record does not show how many shares were issued to the other two shareholders for their $28,000 investment, but we infer they received proportionate amounts of stock. The articles of incorporation declare that "The total number of shares which the corporation is authorized to issue is twenty-five hundred (2500), each share shall be without par value." Since there was no limitation on the amount for which the 2,500 shares in the aggregate could be issued, Warren Fox Dodge does not qualify as a small business corporation under section 1244(c)(2), and the definitional requirements of section 1244(c)(1)(B) are not met. We are compelled to conclude that petitioner's loss from the worthlessness of his Warren Fox Dodge stock is not deductible under section 1244 but is deductible only as a capital loss under section 1211. This is unfortunate for petitioner. His loss ultimately led to *330 his personal bankruptcy and, from an economic standpoint, was as real as any loss fully deductible from gross income. Petitioner's investment in Warren Fox Dodge appears to have been the kind of investment that could have been qualified for the favorable tax treatment accorded by section 1244. But virtually none of the definitional prerequisites of section 1244(c)(1) were met. The initial corporate documents referring to section 1244 reflect an intention to qualify the corporation's stock, but the January 13, 1970, plan appears not to have been adopted until "liquidation and failure * * * [had] become a certainty." Bruce v. United States,409 F.2d 1317, 1318 (C.A. 5, 1969). Even that plan does not meet the requirements of the section. The legislative history of the section shows that Congress intended to limit the benefits to those stocks which satisfy the requirements of the section. Godart v. Commissioner,425 F.2d 633, 637 (C.A. 2, 1970), affirming 51 T.C. 937, 943-944 (1969). To allow the coveted treatment of petitioner's loss would require us to ignore the statute. That we cannot do. Respondent's determination that *331 petitioners are liable for the delinquency penalty provided by section 6651(a)(1) [4]/ must be sustained unless petitioners' tardy filing was due to reasonable cause. Sec. 6651 (a)(1). Reasonable cause has been defined as ordinary business care and prudence. See sec. 301.6651-1(c)(1), Proced. & Admin. Regs. *332 Petitioner contends that pressing business priorities and the assurances given by his accountant amount to the requisite "reasonable cause." We disagree. As set forth in our Findings, petitioner was aware of the April 15 filing deadline. The fact that he was busy with other pressing business concerns does not amount to reasonable cause. Dustin v. Commissioner,467 F.2d 47, 50 (C.A. 9, 1972), affirming 53 T.C. 491 (1969). Petitioner also contends that his failure to file timely was due to reasonable cause since he relied upon his accountant's advice. While good faith reliance upon advice of an accountant that a taxpayer was not required to file a tax return has been held to constitute reasonable cause, cf. C. R. Lindback Foundation,4 T.C. 652, 667 (1945), affirmed per curiam 150 F.2d 986 (C.A. 3, 1945); Daisy M. Twinam,22 T.C. 83, 90-91 (1954), petitioner was not so advised. Rather, his accountant reasoned that the timeliness of the return was inconsequential since any penalty would be applied against the tax owing, which was believed to be zero. Petitioners' accountant never advised them that they *333 need not file at all or that the return was not due on or before the April 15 deadline. Cf., e.g., Deininger v. Commissioner,313 F.2d 221 (C.A. 4, 1963), affirming on this issue a Memorandum Opinion of this Court; Commissioner v. American Ass'n of Eng. Emp.,204 F.2d 19 (C.A. 7, 1953); Cristina deBourbon Patino,13 T.C. 816, 826-827 (1949), affd. 186 F.2d 962 (C.A. 4, 1950); Portable Industries,Inc.,24 T.C. 571, 582-583 (1955); Reliance Factoring Corp.,15 T.C. 604, 608-609 (1950); Gemological Institute of America v. Riddell,149 F. Supp. 128 (S.D. Cal. 1957). In view of the filing requirements mandated by section 6012(a)(1), it is clear that Congress did not intend that a belief that no tax is due, albeit bona fide, should constitute reasonable cause for failure to file a timely return. See Cowden v. Commissioner,365 F.2d 832 (C.A. 1, 1966), affirming a Memorandum Opinion of this Court. Accordingly, an addition to tax pursuant to section 6651(a) is applicable. Decision will be entered for the respondent.
Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.
2. /Sec. 1.1244(c)-1(c)(1), Income Tax Regs.: (c) Written plan. (1) The common stock must be issued pursuant to a written plan adopted by the corporation after June 30, 1958, to offer only such stock during a period specified in the plan ending not later than two years after the date the plan is adopted. The two-year requirement referred to in the preceding sentence will be met if the period specified in the plan is based upon the date when, under the rules or regulations of a Government agency relating to the issuance of the stock, the stock may lawfully be sold, and it is clear that such period will end, and in fact it does end, within two years after the plan is adopted. The plan must specifically state, in terms of dollars, the maximum amount to be received by the corporation in consideration for the stock to be issued pursuant thereto. * * *↩
3. /SEC. 1244. LOSSES ON SMALL BUSINESS STOCK. (c) Section 1244 Stock Defined.-- * * * * * (2) Small business corporation defined.-- For purposes of this section, a corporation shall be treated as a small business corporation if at the time of the adoption of the plan-- (A) the sum of-- (i) the aggregate amount which may be offered under the plan, plus (ii) the aggregate amount of money and other property (taken into account in an amount, as of the time received by the corporation, equal to the adjusted basis to the corporation of such property for determining gain, reduced by any liabilities to which the property was subject or which were assumed by the corporation at such time) received by the corporation after June 30, 1958, for stock, as a contribution to capital, and as paidin surplus, does not exceed $500,000; and (B) the sum of-- (i) the aggregate amount which may be offered under the plan, plus (ii) the equity capital of the corporation (determined on the date of the adoption of the plan), does not exceed $1,000,000. For purposes of subparagraph (B), the equity capital of a corporation is the sum of its money and other property (in an amount equal to the adjusted basis of such property for determining gain), less the amount of its indebtedness (other than indebtedness to shareholders).↩
4. / SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax.--In case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;↩