IRVING MALAWER and RUTH MALAWER, Petitioners v. COMMISSIONER OF INTERNAL, REVENUE, Respondent
Malawer v. Commissioner
Docket No. 6188-70.
United States Tax Court
T.C. Memo 1975-351; 1975 Tax Ct. Memo LEXIS 25; 34 T.C.M. (CCH) 1532; T.C.M. (RIA) 750351; December 8, 1975, Filed Herbert S. Tepper, for the petitioners. Peter W. Mettler,Jeffrey L. Davidson,Fred L. Baker, and Stephen E. Young, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: The respondent determined a deficiency in petitioners' Federal income tax for taxable year 1964 in the amount of $16,192.37. *27 The sole issue remaining for decision is whether petitioners' loss of $27,782.96 on their investment of $84,587.07 in Realty Transfer Corporation is an ordinary loss under section 1244. [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Irving and Ruth Malawer, husband and wife, resided in New York, New York, at the time their petition was filed. Petitioners filed a joint Federal income tax return with the District Director of Internal Revenue, Manhattan, New York, for calendar year 1964. They used the cash basis method of accounting. Ruth Malawer is a petitioner solely by reason of having filed a joint return with her husband, Irving Malawer (hereinafter referred to as "petitioner"). Realty Transfer Corporation (hereinafter referred to as "Realty Transfer") was incorporated in Florida on August 7, 1957, for the purpose of purchasing real estate, constructing rental housing units thereon, and renting apartments to tenants. On November 16, 1959, Realty *28 Transfer purchased real property in Winter Park, Florida. Petitioner presented evidence that during the period from November 16, 1959 through June 4, 1962, the property was surveyed and cleaned up, a building thereon was demolished, architectural plans were drawn and submitted, projections of anticipated income and expenses were prepared, funding for the project was secured, and brochures advertising the building for rental were prepared. A bank account was opened for the first time in 1962. No corporation income tax returns were filed for the years 1957 through 1961, inclusive. Petitioner presented in evidence a single sheet of paper purporting to be a copy of the minutes of the first meeting of the board of directors of Realty Transfer held on June 4, 1962, purportedly signed by George Melter, now deceased. Petitioner was unable to produce the minute book of Realty Transfer at the trial. The copy of the purported minutes of June 4, 1962, listed the stockholders as George Melter, Jack Malawer, Irving Malawer, and Irving Weider, all of whom were stated to be present. According to the minutes, a plan was adopted whereby 50 shares of stock, each having a par value $5of, would be issued *29 over a period of not more than two years pursuant to section 1244 for an aggregate amount not to exceed $500,000. Certificates were to be issued, for the consideration shown, as follows: Stockholders
Number of Shares
Amount
Jack Malawer
9-5/8
$ 27,782.97
Irving Malawer
9-5/8
27,782.96
George Melter
11-1/2
24,056.57
Irving Weider
19-1/4
89,544.86
Totals
50
$169,167.36
Petitioner did not produce any evidence with regard to the issuance of the stock certificates referred to in the plan, although Realty Transfer's stock book was in his possession. Petitioner's accountant, Frank E. Knopf, testified that petitioner and his brother, Jack Malawer, conducted their affairs as a partnership, including the investment in Realty Transfer. He stated that accounts of both petitioner and Jack Malawer were kept in the name of Jack Malawer as part of a private business arrangement between them. Mr. Knopf kept ledger sheets of monies disbursed by Jack and Irving Malawer for investment in Realty Transfer. None of the entries indicate that money was disbursed for section 1244 stock. On October 15, 1965, Realty Transfer filed U.S. corporation income tax returns *30 for calendar years 1962, 1963, and 1964, using the cash basis method of accounting. In amended returns filed February 14, 1966, Realty Transfer reported losses as follows: Year
Loss
1962 $0
1963
7,879.05
1964
425,118.92
The return for 1962 showed capital stock in the amount of $169,167.36 at the end of the year. No stock was outstanding at the beginning of the year. The corporation had abandoned its Florida property by 1964, and the 1964 return showed no assets at the end of the taxable year. Realty Transfer was dissolved on June 30, 1967, for failure to pay its corporation capital stock tax to the State of Florida. Petitioner filed his return for 1964 on October 15, 1965. Petitioner filed an amended return on March 17, 1966, in which he claimed a loss of $84,587.07 on the stock of Realty Transfer, of which $50,000 was claimed as an ordinary loss under section 1244(a), and the remaining $34,587.07 was claimed as a capital loss in accordance with the limitation of section 1244(b). In his notice of deficiency, respondent disallowed as an ordinary loss the deduction of the $50,000 which was claimed under section 1244(a). Petitioner conceded at trial that not *31 more than $27,782.96 of his claimed loss of $50,000 was attributable to section 1244 stock. OPINION Petitioner made investments totaling $84,587.07 in Realty Transfer, a Florida corporation. Realty Transfer purchased real estate in Winter Park, Florida in 1959 and during the period 1959 to 1962 engaged in activities relating to the development of the property as residential rental property. According to a copy of what purported to be the minutes of a meeting of the board of directors of Realty Transfer held on June 4, 1962, Realty Transfer adopted a plan to issue stock to the shareholders in accordance with section 1244. The amount of consideration to be given by petitioner for his shares was $27,782.96, but no evidence was presented by petitioner that this amount was actually paid for such shares or that any stock was ever issued to petitioner. Realty Transfer became insolvent during 1964 and abandoned the property. Petitioner claims an ordinary loss on account of the worthless section 1244 stock in the amount of $27,782.96. Respondent challenges both the authenticity of the minutes and the adequacy of the evidence presented by petitioner with regard to the issuance of stock *32 which would qualify under section 1244. [2] Respondent contends that the petitioner has failed to establish that the corporation adopted a plan as required by section 1244(c)(1)(A) and, therefore, did not issue any stock pursuant to such plan as required by section 1244(c)(1)(D). *33 Petitioner contends that the copy of the purported minutes presented in evidence establishes the adoption of a plan for the issuance of section 1244 stock. Petitioner further contends that the corporation income tax return filed for 1962 establishes that stock was issued pursuant to the agreement because the capital stock outstanding as of December 31, 1962, exceeded the capital stock outstanding at the beginning of taxable year 1962 by the exact amount stated in the purported plan. If the purported minutes are read in conjunction with the 1962 return, petitioner claims that his payment of $27,782.96 is established as having been paid for the shares to be issued pursuant to section 1244. Petitioner claims that the issuance of stock certificates is not necessary to constitute petitioner a shareholder, because stock certificates are merely secondary evidence of ownership. What is crucial, petitioner claims, is the payment of consideration therefor, and petitioner has established his investment in Realty Transfer, a fact which respondent does not challenge. Under section 1244(e), respondent is specifically authorized to issue regulations pertaining to records to be kept by a taxpayer *34 and the corporation for which the taxpayer is claiming a loss on section 1244 stock as well as defining what constitutes the adoption of a plan under section 1244(c)(1)(A). Respondent has promulgated such regulations. The regulations clearly conform to the intent of the Congress. Congress intended the 1244 provision to encourage investments in qualifying small businesses, see H. Rept. No. 2198, 85th Cong., 2d Sess., pp. 1-12. The courts have recognized that the Congressional purpose would be frustrated without contemporaneous proof that taxpayers seeking to qualify stock under section 1244 acted on that basis in making their initial investment decisions. Rickey v. Commissioner,502 F.2d 748 (9th Cir. 1974); Anderson v. United States,436 F.2d 356 (10th Cir. 1971); Godart v. Commissioner,425 F.2d 633 (2d Cir. 1970). Necessary to such a showing is the adoption of a plan and the maintenance of adequate records showing the adoption of the plan and the issuance of stock pursuant to the plan. Section 1.1244(c)-1(c)(1), Income Tax Regs., requires that the stock be issued pursuant to a written plan which specifies the term of the plan *35 and amount of consideration received for the issuance of stock. Section 1.1244(e)-1(a), Income Tax Regs., states that "[the] plan to issue stock which qualifies under section 1244 must appear upon the records of the corporation." In order for its stock to qualify under section 1244, Realty Transfer must keep records showing, inter alia, the names of persons to whom stock was issued pursuant to the plan, the date of issuance to each, and a description of the consideration received from each; the certificates representing the stock which was issued pursuant to the plan; and, the equity capital of the corporation on the date of adoption of the plan. Among the records to be kept by petitioner (as a shareholder) are those showing the manner in which the section 1244 stock was acquired and the amount of consideration paid, such records to be maintained in a manner "sufficient to distinguish" section 1244 stock from other equity interests the taxpayer may have in the corporation. Section 1.1244(e)-1(b), Income Tax Regs.[3] See Wesley H. Morgan,46 T.C. 878, 892 (1966). *36 Petitioner has failed to prove that Realty Transfer adopted a plan to issue stock pursuant to section 1244. Realty Transfer was incorporated in 1957. Petitioner acknowledged that meetings of the directors and/or shareholders of Realty Transfer had taken place on a number of occasions prior to June 4, 1962. Nevertheless, the purported minutes stated that the meeting held on June 4, 1962, was the first meeting of the board of directors. The production at the trial of purported minutes of only one meeting of the board of directors of Realty Transfer, which minutes are crucial to petitioner's case, is not sufficient to meet petitioner's burden. The conclusion is inescapable that the attempt to qualify the stock as section 1244 stock was an afterthought. Petitioner has failed to provide the records required by section 1.1244(e)-1, Income Tax Regs., respecting the issuance of the alleged section 1244 stock. Neither the corporation nor the taxpayer record-keeping provisions have been met. The purported corporate minutes only state the amount of stock to be issued over a period of time for a stated consideration. Such minutes do not constitute proof that the stock was in fact issued. See *37 Bernard Spiegel,49 T.C. 527 (1968). The fact that petitioner made equity investments in Realty Transfer in excess of the amounts contained in the purported section 1244 plan does not imply that such investments were made pursuant to the plan. On the contrary, petitioner's inability to distinguish among qualifying section 1244 investments and other equity investments is manifest in his failure to produce stock certificates, names, or dates for the issuance of section 1244 stock, or to correlate disbursements to Realty Transfer with the purchases of section 1244 stock. Petitioner concededly had the Realty Transfer stock books in his possession, yet he did not introduce them into evidence at trial. Thus, a presumption arises that the information contained therein would not support petitioner's claim to the deduction. Albert L. Dougherty,60 T.C. 917, 933 (1973); Peter E. Blum,59 T.C. 436, 440 (1972); Estate of Dorothy E. Beck,56 T.C. 297, 343-345 (1971); Wichita Terminal Elevator Co.,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). In his individual income tax return *38 for the taxable year 1964, filed on October 15, 1965, petitioner claimed a loss of $112,321.91 on the sale of Realty Transfer stock, all of which was asserted to be section 1244 stock. On March 17, 1966, petitioner filed an amended return for 1964 in which he claimed $84,587.07 as a loss on the sale of section 1244 stock. In both returns, the amount of ordinary loss claimed was limited to $50,000, in accordance with section 1244(b). At trial, petitioner conceded that not more than $27,782.96 of his $84,587.07 loss was attributable to section 1244 stock. Petitioner's vacillations with respect to claimed deductions for section 1244 stock suggest that petitioner had no contemporary knowledge of which equity investments, if any, constituted purported section 1244 purchases. Petitioner has attempted to overcome his lack of proof with respect to the adoption of a plan and the issuance of stock pursuant thereto by resorting to the corporation income tax return of Realty Transfer for 1962, which reflected capital stock issued during the year in exact conformance with the purported minutes. But this return was prepared by petitioner's accountant and was not filed until October 15, 1965, the *39 same day on which the petitioner filed his individual income tax return for 1964. This late filing of a self-serving document cannot be relied upon to establish the existence of a plan or the issuance of section 1244 stock during 1962. Petitioner has the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure. In the case of a special tax benefit, such as is provided by section 1244, the taxpayer must meet his burden of proof in each particular. See Childs v. Commissioner,408 F.2d 531, 533 (3d Cir. 1969). Petitioner did not meet his burden with respect to the adoption of a plan to issue section 1244 stock or with respect to the issuance and payment for section 1244 stock. We conclude that petitioner has not presented sufficient evidence to meet his burden of proof that Realty Transfer adopted a plan to issue section 1244 stock, in accordance with section 1244(c)(1)(A), or that Realty Transfer issued stock pursuant to such plan, as required by section 1244(c)(1)(D). Accordingly, any loss sustained by petitioner as a result of his investments in Realty Transfer must be deemed a capital loss. Decision will be entered for the respondent. *40 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. SEC. 1244. LOSSES ON SMALL BUSINESS STOCK. * * *
(c) Section 1244 Stock Defined.-- (1) In General.--For purposes of this section, the term "section 1244 stock" means a common stock in a domestic corporation if-- (A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan, (B) at the time such plan was adopted, such corporation was a small business corporation, (C) at the time such plan was adopted, no portion of a prior offering was outstanding, (D) such stock was issued by such corporation, pursuant to such plan, for money or other property (other than stock and securities), and (E) such corporation, during the period of its 5 most recent taxable years ending before the date the loss on such stock is sustained * * *, derived more than 50 percent of its aggregate gross receipts from sources other than royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities * * *; except that this subparagraph shall not apply with respect to any corporation if, for the period referred to, the amount of the deductions allowed by this chapter (other than by sections 172, 242, 243, 244, and 245) exceed the amount of gross income.↩
3. H. Rept. No. 2198, 85th Cong., 2d Sess., p. 12, takes note of the necessity for record-keeping regulations: Regulations.↩--Subsection (e) of section * * * [1244] provides that the Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this section. This would include authority to require the maintenance of records sufficient to establish the identity of stock that qualifies as section * * * [1244] stock.