FRANK R. MALINOWSKI AND MARY ANN MALINOWSKI, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

RICHARD E. SOMMERS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 10035–76, 10078–76.     Filed March 29, 1979.

Frank R. Malinowski, pro se in docket No. 10035–76.
Richard E. Sommers, pro se in docket No. 10078–76.
*M. K. Mortensen,* for the respondent.

SIMPSON, *Judge:* The Commissioner determined deficiencies in the petitioners' Federal income taxes for 1972 as follows:

| Petitioner | Deficiency |
|---|---|
| Frank R. Malinowski and Mary Ann Malinowski ................. | $1,978.08 |
| Richard E. Sommers .................:....... | 1,540.32 |

We must decide: (1) Whether, because of the loss of certain corporate records, the Commissioner had the burden of proving that stock did not qualify as "section 1244 stock" under section 1244 of the Internal Revenue Code of 1954;[1] (2) whether a loss incurred on the worthlessness of certain stock is deductible as an ordinary loss, (A) because such stock qualified as section 1244 stock, or (B) because, in the alternative, the petitioners were creditors and the loss was a business bad debt; and (3) whether the petitioners are entitled to deduct such loss as a short-term capital loss because another taxpayer was allegedly allowed to treat the loss as a nonbusiness bad debt.

## FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioners, Frank R. and Mary Ann Malinowski, husband and wife, maintained their legal residence in Santa Barbara, Calif., at the time they filed their petition in this case. They filed their joint Federal income tax return for 1972.

The petitioner, Richard E. Sommers, maintained his legal residence in Santa Ana, Calif., at the time he filed his petition in this case. He timely filed his Federal income tax return for 1972, and subsequently, he filed an amended Federal income tax return for such year.

During the mid–1950's, ALCU Enterprises (ALCU), a partnership, was formed. From 1969 through the year in issue, the partners in ALCU were Philip D. Bayless, Mr. Malinowski, and Mr. Sommers. ALCU's primary purpose was to invest in various en-

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.

terprises, and over the years, it had invested primarily in stocks and real estate.

In June 1969, ALCU loaned $22,000 to Business Automation of Oxnard (BAO), a partnership. Subsequently, ALCU and BAO agreed that BAO should incorporate as Business Automation of California, Inc. (BAC), and that BAC should then issue 220 shares of its stock to ALCU in consideration for ALCU canceling the $22,000 indebtedness from BAO to ALCU. On or about July 28, 1969, BAO was incorporated as BAC, and BAC issued 220 shares of its stock to ALCU. With the exception of one other loan to a corporation in 1969, ALCU made no other loans from the time of its formation to the time of trial.

During the course of the negotiations between BAO and ALCU, H. T. Cotter, who was a partner in BAO and who subsequently became president of BAC, negotiated with Mr. Malinowski, Mr. Sommers, and Mr. Bayless. All of them were aware that certain tax advantages were available to small businesses, and they intended to take full advantage of such provisions. Yet, Mr. Cotter, Mr. Malinowski, Mr. Sommers, and Mr. Bayless were not aware of, nor had they ever seen, a written plan pursuant to which the BAC stock was issued to ALCU as section 1244 stock.

On November 19, 1969, BAC held a directors meeting at which the board of directors, inter alia, "unanimously resolved the following: * * * (2) Resolution for company to seek additional issue of 300 shares (30,000 shares after split)." In the minutes of such meeting, there was no reference to any plan for the issuance of section 1244 stock; there was no indication that the stock was to be issued under such a plan or that it was to be issued in addition to the stock issued under such a plan.

On or about May 8, 1972, Mr. Cotter, acting on behalf of BAC, and Ronald A. Zuckerman, the owner of Business Computing Service of Santa Barbara (BCS), entered into an agreement whereby BCS would take over the ongoing operations of BAC. One of the conditions of such agreement was that BCS "assume full control of all the records, accounts, bank accounts and the entire business" of BAC. On or about June 1, 1972, BCS assumed control of BAC's business and records. The BAC records transferred to BCS included minutes of meetings, articles of incorporation, and other corporate documents.

In the latter part of 1972, Mr. Zuckerman was contacted by a revenue officer of the Internal Revenue Service (IRS). BAC was

delinquent in its payment of certain Federal withholding taxes, and the revenue officer wanted BAC's corporate records in connection with such matter. Mr. Zuckerman cooperated with the revenue officer by giving him most of BAC's corporate records, including BAC's articles of incorporation and corporate minutes. The revenue officer gave Mr. Zuckerman a receipt for such records. When the revenue officer finished with BAC's records, he delivered them to his supervisor, who indicated that the records would be returned to Mr. Zuckerman. However, Mr. Zuckerman never regained possession of such records, although he no longer has the receipt for them given to him by the officer. All efforts by the petitioners to locate the records proved fruitless. Mr. Zuckerman was not aware of any BAC corporate document qualifying certain issues of its stock as section 1244 stock.

In 1972, the BAC stock owned by ALCU became worthless. ALCU claimed the $22,000 loss resulting from such worthlessness as an ordinary loss on its 1972 partnership return because it was claimed to be section 1244 stock. The petitioners reported their distributive shares of such loss on their 1972 Federal income tax returns as an ordinary section 1244 loss. In the deficiency notices, the Commissioner disallowed the ordinary loss because the petitioners could not establish the stock had been issued as section 1244 stock.

## OPINION

Generally, section 1244 provides that a loss on the sale or exchange (or worthlessness) of "section 1244 stock" shall, under certain circumstances and subject to specified limitations, be deductible as an ordinary loss. Sec. 1.1244(a)–1(a), Income Tax Regs.; *Mogab v. Commissioner*, 70 T.C. 208 (1978). In the regulations under section 1244(c), section 1244 stock is defined, inter alia, as common stock "issued pursuant to a written plan adopted by the corporation after June 30, 1958, to offer only such stock during a period specified in the plan ending not later than two years after the date the plan is adopted." Sec. 1.1244(c)–1(c), Income Tax Regs. In addition, the regulations require that the corporation keep a record of the written plan and that the taxpayer keep sufficient records to establish his stock as section 1244 stock. Sec. 1.1244(e)–1, Income Tax Regs.

In light of these provisions, the petitioners raise two arguments to support the deductibility under section 1244 of the loss

on the worthlessness of the stock as an ordinary loss. First, they argue that because BAC's corporate books and records were not returned to BCS or to them by the IRS, the burden of proof should be shifted to the Commissioner to establish that a written plan was not adopted. Second, they contend that the requirement of a written plan places an unfair and unjust burden on taxpayers and that such requirement is contrary to the congressional intent. Alternatively, they argue that if we hold the stock was not section 1244 stock, then there was a failure of consideration and they are restored to the position of a creditor. Under this theory, the loss would be deductible under section 166 as a bad debt. Finally, they complain that the IRS has acted arbitrarily by insisting they report the loss as a long-term capital loss although Mr. Bayless allegedly was permitted to report the same loss as a nonbusiness bad debt. They believe such inconsistent treatment denies them "due process and equal treatment and protection under the law." There is no merit in any of such arguments.

It has long been the rule in Tax Court proceedings that, generally, the taxpayer bears the burden of proving the error in the Commissioner's deficiency determination. Rule 142, Tax Court Rules of Practice and Procedure; *Welch v. Helvering*, 290 U.S. 111 (1933). The necessity of such a rule, especially when a deduction is in issue, can hardly be questioned. E.g., *Rockwell v. Commissioner*, 512 F.2d 882 (9th Cir. 1975), affg. a Memorandum Opinion of this Court, cert. denied 423 U.S. 1015 (1975); *Chaum v. Commissioner*, 69 T.C. 156 (1977). The petitioners accept such general rule, but they claim that the Commissioner is responsible for their inability to produce the corporate records and that, for that reason, he should bear the burden of proving that there was no written plan under section 1244.

Rule 1004 of the Federal Rules of Evidence, which specifically deals with the admissibility of secondary evidence to prove the contents of a writing where the original is not available, provides, in relevant part, as follows:

Rule 1004. Admissibility of Other Evidence of Contents

The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if—

(1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or

\*   \*   \*   \*   \*   \*   \*

(3) Original in possession of opponent. At a time when an original was under the control of the party against whom offered, he was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and he does not produce the original at the hearing; \* \* \*

See also 4 J. Wigmore, Evidence, ch. 41 (Chadbourn rev. 1972); 2 B. Jones, Evidence, secs. 7:12–7:30 (6th ed. 1972). Such rule is applicable in Tax Court proceedings. Sec. 7453; rules 101 and 1101, Federal Rules of Evidence; Rule 143, Tax Court Rules of Practice and Procedure; see generally H. Dubroff & D. Grossman, "The United States Tax Court: An Historical Analysis, Part VI, Trial and Post-Trial Procedure," 42 Alb. L. Rev. 191, 192–204 (1978). Under such rule, the inability to produce a record which is unintentionally lost, whether by the petitioner, the Commissioner, or by a third party, alters the type of evidence which may be offered to establish a fact, but the rule does not affect the burden of proving a fact. We have no reason to believe that the IRS intentionally destroyed the BAC records turned over to it. On the record before us, it is not clear who is responsible for the loss of such records; all that we can find is that the records are not now available. The petitioners have cited us to no authority for shifting the burden of proof, and after extensive, independent research, we have found no such authority. Accordingly, we hold that the petitioners retain the burden of proving their BAC stock was section 1244 stock.

At the trial, we allowed the petitioners to present all secondary evidence which they possessed; nevertheless, we must conclude that the petitioners have failed to meet their burden. There is not a single shred of evidence indicating that their BAC stock was issued pursuant to a written plan which met the provisions of section 1244 and the regulations thereunder. Certainly, "There is no evidence that the corporation even considered adopting a plan to issue 'section 1244 stock.'" *Rickey v. Commissioner*, 54 T.C. 680, 700 (1970), affd. 502 F.2d 748 (9th Cir. 1974); *Childs v. Commissioner*, 408 F.2d 531, 533 (3d Cir. 1969), affg. a Memorandum Opinion of this Court. There was some testimony to the effect that the petitioners and Mr. Bayless were aware that some tax advantages were available for small business investors; yet, it is clear that they were not even aware of the specific requirements of section 1244. *Godart v. Commissioner*, 425 F.2d 633, 638 (2d Cir. 1970), affg. 51 T.C. 937 (1969).

In fact, the available evidence strongly suggests that a written plan was never adopted. This Court specifically asked Mr. Sommers, Mr. Malinowski, and Mr. Zuckerman if they had ever seen a written plan to issue BAC stock as section 1244 stock, and each of them answered unequivocally in the negative. Nor did Mr. Bayless claim such written document existed, and even a letter written by Mr. Cotter for the express purpose of establishing that section 1244 stock had been issued, does not state that Mr. Cotter saw a written plan or that such a plan had ever been drafted. Though we do not have in evidence all of BAC's books and records, we do have copies of the articles of incorporation, the preincorporation agreement, and the minutes of the first board of directors meeting. If a written plan to qualify under section 1244 had been adopted, it seems that such records would have included such plan, or at least a reference to it; yet, read alone or together, these documents do not contain even a fleeting reference to section 1244 stock, much less a written plan to issue such stock. Moreover, on November 19, 1969, only a few months after BAC issued the stock to ALCU, the board of directors of BAC held a meeting at which it was resolved that Mr. Cotter should seek an additional issue of stock. If BAC had adopted a proper plan under section 1244 when the ALCU stock was issued, such plan would have restricted the stock to be issued during the period the plan was in effect, and the failure to refer to any such plan in connection with the authorization on November 19, 1969, to issue additional stock strongly suggests that no such plan had been adopted. In short, there is absolutely no "substantially contemporary objective evidence" that a written plan to issue section 1244 stock was ever adopted or even ever considered. *Anderson v. United States*, 436 F.2d 356, 359 (10th Cir. 1971); *Godart v. Commissioner, supra* at 638.

In addition, the petitioners' argument that a written plan is too burdensome and that such requirement is contrary to the congressional intent is totally without merit. The House committee report accompanying the bill which eventually became the Small Business Tax Revision Act of 1958, Pub. L. 85–866, 72 Stat. 1676, expressly stated as follows:

> The stock must have been issued pursuant to a plan to offer not more than a stated dollar amount of stock during a period (ending not later than 2 years after the date that the plan is adopted) specified in the plan. *Such plan must be*

*in writing* and adopted after June 30, 1958. * * * [H. Rept. 2198, 85th Cong., 1st Sess. (1958), 1959-2 C.B. 709, 714; emphasis supplied.]

Based in part on such language, this Court has repeatedly sustained the written plan requirement of the regulations (*Kaplan v. Commissioner*, 59 T.C. 178, 181 (1972); *Siebert v. Commissioner*, 53 T.C. 1, 5 (1969); *Spiegel v. Commissioner*, 49 T.C. 527, 531 (1968)), and there is no basis for departing from that holding in this case.[2]

We also are not persuaded by the petitioners' alternative argument that they were in the trade or business of making loans, that the cancellation of the loan to BAO was conditioned on BAC issuing section 1244 stock to them, and that since BAC did not issue such stock, they are restored to the position of a creditor. Section 166(a)(1) provides a deduction for any *debt* which becomes wholly worthless within the taxable year. The regulations require the existence of a bona fide debt, which is defined as "a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Sec. 1.166–1(c), Income Tax Regs.

Here, the evidence does not establish that the petitioners were in the trade or business of making loans. In approximately 25 years, ALCU had made only 2 loans. In addition, the petitioners have failed to prove that they were to receive section 1244 stock. There is nothing in the preincorporation agreement, the articles of incorporation, or the minutes of the first directors meeting, which even remotely suggests such an agreement. Accordingly, they have failed to establish the facts on which their argument is based. Moreover, it is clear in this case that *BAC* owed no enforceable debt to the petitioners and that there was no debtor-creditor relationship between them. See *Delta Plastics Corp. v. Commissioner*, 54 T.C. 1287 (1970); *A. Finkenberg's Sons, Inc. v. Commissioner*, 17 T.C. 973 (1951). The petitioners were shareholders, not creditors, of BAC, and any misunderstanding between BAO and the petitioners did not retroactively alter such status.

---

[2]Sec. 345(c), Revenue Act of 1978, Pub. L. 95–600, 92 Stat. 2845, eliminated the requirement in the regulations that sec. 1244 stock be issued pursuant to a written plan. H. Conf. Rept. 95–1800, to accompany H.R. 13511 (Pub. L. 95–600), 242–243 (1978); S. Rept. 95–1263, to accompany H.R. 13511 (Pub. L. 95–600), 158–160 (1978); H. Rept. 95–1445, to accompany H.R. 13511 (Pub. L. 95–600), 106–108 (1978). However, such amendment applies only to stock issued after the date of the enactment of such Act (Nov. 6, 1978). Revenue Act of 1978, *supra*, sec. 345(e) at 2845.

Finally, there is no merit in the petitioners' duty of consistency argument. It suffers from fatal procedural, factual, and substantive defects. As a procedural matter, the issue has not been properly or timely raised. Rule 34, Tax Court Rules of Practice and Procedure, requires the petitioners to include in their petitions clear and concise assignments of each and every error which they allege to have been committed by the Commissioner. In addition, Rule 39 of such Rules requires the petitioners to set forth in their petitions any matter constituting an avoidance or affirmative defense. Clearly, under such Rules, the petitioners were required to raise the duty of consistency issue in their pleadings; yet, their pleadings contain no mention of it. Accordingly, the issue has not been properly raised. See *Isenbergh v. Commissioner*, 31 T.C. 1046, 1057 (1959).

As a factual matter, the petitioners have not established that the Commissioner treated Mr. Bayless and them inconsistently. All we know is that Mr. Bayless had already "elected" to limit his allowable deduction to $1,000 per year prior to the audit and that as a result of the audit, he was not required to change such "election." The evidence does not establish any of the circumstances surrounding the audit of Mr. Bayless, such as whether requiring him to change his tax return would have affected his tax liability, nor does the evidence establish that the IRS permitted Mr. Bayless to treat the loss as a nonbusiness bad debt. In fact, the district conference report indicates that the IRS concluded that none of the partners in ALCU were entitled to a bad debt deduction. We were not provided Mr. Bayless's tax return. On this record, we could not conclude that the IRS treated Mr. Bayless and the petitioners inconsistently.

Even if the petitioners had surmounted these procedural and factual hurdles, they would not be entitled to any relief. It has long been the position of this Court that our responsibility is to apply the law to the facts of the case before us and to determine the tax liability of the parties before us; how the Commissioner may have treated other taxpayers has generally been considered irrelevant in making that determination. See *Davis v. Commissioner*, 65 T.C. 1014, 1022 (1976), and the cases cited therein. As we stated in *Estate of Guenzel v. Commissioner*, 28 T.C. 59, 63 (1957), aff'd. 258 F.2d 248 (8th Cir. 1958):

The fact that the Commissioner's position here might be inconsistent with the position taken by the Commissioner in the wife's estate is immaterial. No

double tax, as a result of one transaction, results as to the present taxpayer. It cannot base an argument of estoppel upon a showing of inconsistency with the assertion of tax liability against another taxpayer. *Chilhowee Mills, Inc.,* 4 T.C. 558.

Furthermore, it is firmly established that the Commissioner is authorized to correct mistakes of law made by him or his agents. *Dixon v. United States,* 381 U.S. 68, 72–76 (1965); *Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 183–184 (1957). Whether Mr. Bayless was the beneficiary of a mistake of law is of no concern to the petitioners; the correct treatment of the loss incurred on the worthless stock was a long-term capital loss, and the petitioners acquired no vested interest in any mistake of law the Commissioner may have committed with respect to Mr. Bayless.

*Decisions will be entered for the respondent.*