T.C. Summary Opinion 2008-138

UNITED STATES TAX COURT

LADISLAU P. AND ANDREA HORVATH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10782-06S.              Filed October 30, 2008.

Ladislau P. and Andrea Horvath, pro sese.

<u>John M. Tkacik, Jr.</u>, for respondent.

RUWE, <u>Judge</u>:  This case was heard pursuant to the provisions
of section 7463 of the Internal Revenue Code in effect when the
petition was filed.[1]  Pursuant to 7463(b), the decision to be

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years at issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in petitioners' Federal income taxes of $23,179 and $29,776 and accuracy-related penalties under section 6662(a) of $4,636 and $5,955 for years 2002 and 2003 (years at issue), respectively.[2]  After concessions, we must decide:  (1) Whether petitioners have unreported income for the years at issue; (2) whether petitioners are entitled to deduct, under section 162, business expenses related to both (a) the use of their automobiles for the years at issue, and (b) their reported supplies expense for 2003; and (3) whether petitioners are liable for section 6662(a) accuracy-related penalties for the years at issue.

## Background

Some of the facts have been stipulated and are so found. At the time their petition was filed, petitioners resided in Ohio.

Petitioners are husband and wife.  They owned Transil Dental Lab (Transil), which was operated out of their residence. Petitioners' business consisted of making dental molds, crowns, dentures, and other related dental products for various dentists. Mrs. Horvath worked both as the manager of the business and as

---

[2] Where appropriate, figures have been rounded to the nearest dollar.

the delivery and pickup driver.  During the years at issue, petitioners owned several vehicles, which were used to make deliveries for Transil.  Petitioners maintained business records which included a mileage log for the business use of each vehicle.  Shell credit card statements (gas receipts) entered into evidence at trial showed the locations and amounts of gasoline purchased by petitioners during the years at issue.  The gas receipts showed total expenses of $1,389 for 2002 and $1,383 for 2003.  Petitioners also entered into evidence various automobile repair receipts and vehicle registrations which showed odometer readings for several of the vehicles for years before, during, and after the years at issue.  Further documentary evidence entered at trial included an example of the number of deliveries petitioners made on a weekly basis and a list of the dentists and the distance between their home and the dentists' offices.

Petitioners' Schedules C, Profit or Loss From Business, reported gross receipts of $71,000 and $75,250[3] for 2002 and 2003, respectively.  Petitioners' reported expenses included, among others, $21,900 and $10,800 of car and truck expenses, calculated using the standard mileage rate, for 2002 and 2003,

---

[3] While petitioners' 2003 Schedule C shows gross receipts of $75,250, the parties' stipulation of facts indicates, without further explanation, that petitioners' gross receipts on their 2003 Schedule C were $75,190.

respectively, and a supplies expense of $20,068 for 2003. After deductions for returns and allowances and total expenses, petitioners reported net profits/business income of $14,417 for 2002 and $13,079 for 2003. Petitioners' business income was the only income reported by petitioners for the years at issue.

After petitioners filed their tax returns for the years at issue, their business records, including the mileage logs, were destroyed when their basement flooded in 2004.

Respondent determined that petitioners had unreported income on the basis of deposits into their bank accounts. For 2002, petitioners deposited funds into two checking accounts at Ohio Savings Bank.[4] Total deposits into the two accounts during 2002 was $160,144. Respondent identified $53,027 in nontaxable transfers between the two accounts in 2002 and concluded that petitioners' total income was $107,116. However, petitioners' bank statements also showed a "DEBIT MEMO"[5] of $4,271 on January 31, 2002, and a "DEBIT MEMO" of $9,000 on March 20, 2002. Respondent's bank deposits analysis arrived at net deposits by subtracting transfers between petitioners' accounts but did not consider the two debit memos made by the bank. After subtracting

---

[4] One of the Ohio Savings Bank checking accounts was in the name of Transil, account no. xxxxxxx5493, while the other was in petitioner Ladislau Horvath's name, account no. xxxxxxx6660.

[5] On the basis of the bank statements, we interpret the "DEBIT MEMO" as a nontaxable transaction reversing the corresponding deposit from petitioners' bank account.

the two debit memos the net deposits into petitioners' bank accounts in 2002 were $93,845.

For 2003, petitioners deposited funds into four checking accounts, two at Ohio Savings Bank and two at Charter One Bank.[6] Respondent determined total deposits into the four accounts of $167,286 and identified $60,257 of nontaxable transfers between the accounts. After allowing for transfers, respondent concluded that petitioners' total income was $107,028. One of petitioners' bank statements, however, showed a "DEBIT MEMO" of $241 on January 21, 2003, which respondent did not consider. After subtracting the debit memo, the net deposits into petitioners' bank accounts were $106,788 in 2003.

### Discussion

### I. Unreported Income

As a general rule, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that these determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

---

[6] The two Ohio Savings Bank checking accounts are the same two identified previously. See supra note 4. These two accounts were closed on Aug. 31, 2003. The two checking accounts at Charter One Bank were opened on Aug. 27, 2003, one in the name of Transil, account no. xxx-xxx313-0, and the other in petitioners' names, account no. xxx-xxx070-2.

Where taxpayers are unable to produce substantiating business records of their income, the Commissioner may use the bank deposits method to reconstruct and compute the taxpayers' income. See Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). A bank deposit is prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The bank deposits method of reconstruction assumes that all of the money deposited into the taxpayers' accounts is includable in gross income unless the taxpayers show that the deposits are not taxable. DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), affd. 959 F.2d 16 (2d Cir. 1992). The Commissioner, however, must take into account any nontaxable items and deductible expenses of which the Commissioner has knowledge. Id.

For 2002, respondent argues that petitioners had total deposits of $160,144 and nontaxable transfers of $53,027. For 2003, respondent argues that petitioners had total deposits of $167,286 and nontaxable transfers of $60,257. Respondent argues that his bank deposits analysis supports a finding that petitioners had net deposits of $107,116 for 2002 and $107,029 for 2003. Because petitioners' Schedules C reported gross receipts of only $71,000 for 2002 and $75,250 for 2003, respondent contends that the difference between these figures

amounts to unreported income of $36,116 for 2002 and $31,779 for 2003.[7]

Petitioners do not dispute respondent's use of the bank deposits method of reconstruction and do not allege any specific error in respondent's computations.  Rather, petitioners contend that they maintained business records during the years at issue that were destroyed, that their tax returns for those years accurately reported their income and expenses, and that respondent's determinations are therefore erroneous.

After reviewing petitioners' bank statements, it appears that respondent erroneously included $13,271 for 2002 and $241 for 2003 in petitioners' total net deposits.  The bank statements indicate that respondent's bank deposits calculations included a $4,271 deposit on January 31, 2002, a $9,000 deposit on March 20, 2002, and a $241 deposit on January 21, 2003, without considering the corresponding debit memos.  Each of these deposits appears to be attributable to transactional errors reflected in the bank statements.  The bank statements indicate that each of the "deposits" was corrected with a same-day "DEBIT MEMO" removing the "deposit" from petitioners' account.  On the basis of the foregoing, we find that petitioners understated their gross receipts by $22,845 in 2002 and by $31,538 in 2003.

---

[7] The statutory notice of deficiency originally determined unreported income of $37,677 for 2002 and $50,593 for 2003.  At trial, respondent reduced his allegation of unreported income to $36,116 for 2002 and $31,779 for 2003.

II. <u>Disallowed Deductions</u>

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving he is entitled to the deductions claimed. Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934). Section 162(a) allows a taxpayer to deduct all the ordinary and necessary expenses paid or incurred in carrying on a trade or business. Petitioners claimed business deductions for the use of their personal vehicles and for supplies used in their business. Respondent disallowed these deductions due to petitioners' lack of substantiation.

    a.   <u>Car and Truck Expenses</u>

Section 274(d) provides:

SEC. 274.  DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC.,
            EXPENSES.

    (d) Substantiation Required.--No deduction or credit shall be allowed--

        \*     \*     \*     \*     \*     \*     \*

      (4) with respect to any listed property (as defined in section 280F(d)(4)),

unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility or property, or receiving the gift. \* \* \*

Section 280F(d)(4)(A)(i) provides that passenger automobiles are "listed property".  Thus, the heightened substantiation requirements of section 274(d) are applicable to petitioners' claimed car and truck expense deductions.

Substantiation is to be made by either "adequate records" or "sufficient evidence corroborating the taxpayer's own statement".  Sec. 274(d); sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).  "To meet the 'adequate records' requirements of section 274(d), a taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record * * *, and documentary evidence".  Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  In lieu of substantiating the actual amount of an expenditure related to the business use of a passenger automobile, a taxpayer may use the standard mileage rate established by the Commissioner.[8]  Sec. 1.274-5(j)(2), Income Tax Regs.

Petitioners kept a log of their business use of their automobiles that would have provided the required information.  However, petitioners testified and provided documentation to prove that these records were lost as a result of flood damage in

---

[8] The optional standard mileage rate for business use of a passenger automobile was 36.5 cents and 36 cents per mile for 2002 and 2003, respectively.  See Rev. Proc. 2001-54, sec. 5, 2001-2 C.B. 530, 531; Rev. Proc. 2002-61, sec. 5, 2002-2 C.B. 616, 618.

2004.  Where, as here, the taxpayer establishes that the failure to produce adequate records is due to the loss of the records through circumstances beyond the taxpayer's control, such as destruction by flood, the taxpayer may substantiate a deduction by reasonable reconstruction of his expenditures or use.  Sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985); see also Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979); Schneider v. Commissioner, T.C. Memo. 1978-447.  Where documentation is unavailable "the Court may, although it is not required to do so, accept the taxpayer's testimony to substantiate the deduction."  Davis v. Commissioner, T.C. Memo. 2006-272; see also Boyd v. Commissioner, 122 T.C. 305, 320 (2004); Watson v. Commissioner, T.C. Memo. 1988-29.

Petitioners have presented credible testimony and evidence sufficient to reconstruct a portion of their car and truck expenses.  It is clear that petitioners used their vehicles for deliveries in their business.  They testified that their vehicles were used primarily for business purposes.  Petitioners also testified and presented documentary evidence of the locations of and the frequency with which they traveled to the various dentists' offices.

Petitioners produced partial gasoline receipts totaling $1,389 for 2002 and $1,383 for 2003.[9]  The Energy Information Administration reports that the average price of gasoline in the Midwestern United States was 136.5 cents per gallon and 154.8 cents per gallon in 2002 and 2003, respectively.  The U.S. Department of Transportation reports the average fuel efficiency of U.S. passenger cars as 22 miles per gallon in 2002 and 22.2 miles per gallon in 2003.  On this basis, we conclude that petitioners' business use of their vehicles totaled at least 20,000 miles in 2002 and 18,000 miles in 2003 and that petitioners are entitled to deductions for business use of their vehicles using the standard mileage rate.  See sec. 1.274-5(j)(2), Income Tax Regs.; Rev. Proc. 2001-54, sec. 5, 2001-2 C.B. 530, 531; Rev. Proc. 2002-61, sec. 5, 2002-2 C.B. 616, 618.

   b.   <u>Business Supplies Expense</u>

Petitioners' 2003 Schedule C reported a supplies expense of $20,068.  Respondent allowed $6,216 and disallowed the remaining $13,852 (disallowed portion).

Both petitioners and respondent indicated at trial that the disallowed portion of the supplies expense deduction remained at issue; however, neither party offered any evidence.  Because petitioners bear the burden of proof, we find that petitioners are not entitled to a deduction for business supplies expenses in

---

[9] For some of the months in each year there were no receipts.

excess of the amount allowed by respondent for 2003. Rule 142(a); Levin v. Commissioner, 87 T.C. 698, 722-723 (1986), affd. 832 F.2d 403 (7th Cir. 1987).

III. Section 6662(a) Accuracy-Related Penalty

Section 6662(a) provides that a taxpayer is liable for a 20-percent accuracy-related penalty on any portion of an underpayment of tax required to be shown on a return attributable to, inter alia, (1) negligence or disregard of the rules or regulations or (2) a substantial understatement of income tax. See sec. 6662(b).

Respondent's position with respect to the accuracy-related penalties is unclear. The notice of deficiency sent to petitioners included accuracy-related penalties under section 6662(a). At the beginning of trial the parties indicated that the only issues remaining in dispute for 2002 were unreported income and a car and truck expense deduction and for 2003 were unreported income, a car and truck expense deduction, and a supplies expense deduction.

In any event, the penalty under section 6662(a) shall not be imposed upon any portion of an underpayment where the taxpayer shows that he or she acted with reasonable cause and in good faith with respect to such portion. See sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. 438, 448 (2001). The determination of whether a taxpayer acted with reasonable cause and in good faith

is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  Higbee v. Commissioner, supra at 448;  Sec. 1.6664-4(b)(1), Income Tax Regs.  The most important factor is the extent of the taxpayer's effort to assess his proper tax liability for the year.  Sec. 1.6664-4(b)(1), Income Tax Regs.  "Circumstances that may indicate reasonable cause and good faith include * * * the experience, knowledge, and education of the taxpayer."  Id.

On the basis of petitioners' testimony, we are satisfied that petitioners maintained business records to the best of their ability and that information reported on their 2002 and 2003 tax returns reflected a good faith effort to assess their correct tax liabilities.  As previously noted, petitioners' business records for the years at issue were destroyed by flood in 2004.  Even though petitioners have been unable to completely reconstruct their records, we are persuaded and conclude that petitioners made a substantial effort to assess their proper tax liabilities for the years at issue, and, consequently, that petitioners acted with reasonable cause and in good faith as required under section 6664(c)(1).  Accordingly, we hold that petitioners are not liable for section 6662(a) accuracy-related penalties for 2002 and 2003.

In reaching our holdings herein, we have considered all arguments made, and to the extent not mentioned above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.