T.C. Memo. 2017-186

UNITED STATES TAX COURT

JOE POKAWA AND NANCY FATOMA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9920-16. Filed September 21, 2017.

Joe Pokawa and Nancy Fatoma, pro sese.

<u>Marty Jane Dama</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>: Respondent determined deficiencies in petitioners'

2013 and 2014 Federal income tax of $37,210 and $15,897, respectively.

[*2] Respondent further determined penalties pursuant to section 6662(a) of $7,244 and $2,193 for tax years 2013 and 2014, respectively.[1]

The issues for decision are: (1) whether petitioners are entitled to deductions claimed on Schedules C, Profit or Loss From Business, greater than respondent has allowed; (2) whether petitioners are entitled to deductions for unreimbursed employee business expenses and mortgage interest and points as claimed on Schedules A, Itemized Deductions; (3) whether petitioners are entitled to dependency exemption deductions; (4) whether petitioners are entitled to education credits; (5) whether petitioners are liable for the section 72(t) additional tax on premature distributions from a qualified retirement plan; and (6) whether petitioners are liable for accuracy-related penalties pursuant to section 6662(a).[2]

---

[1]All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. Monetary amounts are rounded to the nearest dollar.

[2]Respondent made additional adjustments that are merely computational and depend upon our resolution of the remaining issues. We do not discuss the computational adjustments further. In addition, the adjustment in the notice of deficiency for "XXX-XX-3272" for 2013 of $1,500--which the parties have not addressed--appears to duplicate the computational adjustment for the education credit for 2013 of $1,500; we expect the Rule 155 computations will so reflect.

[*3]                           FINDINGS OF FACT

The parties have stipulated some facts, which we incorporate by this reference. When they timely petitioned the Court, petitioners resided in Texas.

During the years at issue Ms. Fatoma was employed as a nurse aide. She earned wages of $10,023 in 2013 and $8,159 in 2014.

At the start of 2013 Mr. Pokawa was employed by AT&T, but he lost that job later in the year. He earned wages of $53,114 from AT&T in 2013 and $5,984 from Ad Susman & Associates, Inc., in 2014.

After losing his job with AT&T Mr. Pokawa withdrew money from a retirement account to invest in various business activities. The withdrawals were reported on Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. The Forms 1099-R reported gross distributions of $83,480 and $12,448 for 2013 and 2014, respectively, and indicated distribution code 1 for an early distribution with no known exception. In 2014 Mr. Pokawa turned 49 years of age.

In 2013 Mr. Pokawa operated a business called United Banquet Hall. He began operating United Banquet Hall as early as 2010 and realized a net loss for each year of operation.

**[*4]**   During 2013 and 2014 Mr. Pokawa operated a tax return preparation business, 1st Class Tax Services, out of his home.  He began operating that business as early as 2008, but 2013 was the first year for which he reported any profit.

During 2013 and 2014 Mr. Pokawa also operated a business called Sierra Outreach Center (sometimes referenced in the record as Sierra (Leone) Outreach Center).  Through September 2013 Sierra Outreach Center was at an address on Broadway Boulevard in Garland, Texas.  In October 2013 Sierra Outreach Center moved to a location on National Drive, also in Garland, Texas.  Mr. Pokawa described the Sierra Outreach Center as a furnished warehouse that he rented for meetings.  The Sierra Outreach Center began operating as early as 2012 and realized a net loss for each year of operation.

During 2014 Mr. Pokawa briefly, "for like a week or month", operated an Uber driving business.[3]

---

[3]Mr. Pokawa testified that he had to purchase a car in order to begin the Uber driving business but after the car "broke down because of the excessive driving, * * * [he] did not continue with it."

**[\*5]**  During 2013 Mr. Pokawa's daughter, H.J., who was born in 1996, resided with petitioners at their residence.[4]  During 2014 Mr. Pokawa's son, A.P., who was born in 2002, resided with petitioners.

Petitioners' 2013 and 2014 Federal Income Tax Returns

Petitioners filed joint Federal income tax returns for 2013 and 2014 reporting income from wages, unemployment compensation, and pensions and annuities.  Petitioners also reported Schedule C losses for 2013 and 2014 of $68,080 and $5,132, respectively.

Schedule C Expenses

Petitioners attached three Schedules C to their 2013 return.  The 2013 Schedule C for United Banquet Hall reported no gross income and total expenses of $7,765, including expenses for, among other things, contract labor, rent or lease of other business property, and rent or lease of vehicles, machinery, and equipment.  The 2013 Schedule C for 1st Class Tax Services reported gross income of $12,256 and total expenses of $9,190 for, among other things, advertising, car and truck, and meals and entertainment.  The 2013 Schedule C for Sierra Outreach Center reported gross income of $3,060 and total expenses of

---

[4]The Court refers to minor children by their initials.  See Rule 27(a)(3).

[*6] $66,441 for, among other things, car and truck, contract labor, rent or lease of other business property, and utilities.

Petitioners also attached three Schedules C to their 2014 return. The 2014 Schedule C for 1st Class Tax Services reported gross income of $35,056 and total expenses of $14,426 for, among other things, commissions and fees, rent or lease of other business property, and utilities.[5] The 2014 Schedule C for Sierra Outreach Center reported gross income of $7,146 and total expenses of $24,315 for, among other things, car and truck, rent or lease of other business property, and utilities. The 2014 Schedule C for the Uber driving business reported gross income of $442 and total expenses of $9,035 for, among other things, car and truck.

Itemized Deductions

On Schedules A for 2013 and 2014 petitioners claimed itemized deductions for, among other things, mortgage interest and unreimbursed employee business expenses. For 2013 petitioners claimed a deduction of $3,846 for mortgage interest, and for 2014 they claimed a deduction of $5,421 for mortgage interest and mortgage insurance premiums.

_____

[5]Unlike the corresponding 2013 Schedule C, petitioners' 2014 Schedule C for 1st Class Tax Services did not include deductions for car and truck expenses.

**[*7]**  For 2013 and 2014 petitioners reported unreimbursed employee business expenses of $20,891 and $9,678, respectively.  Petitioners attached to their 2013 return two Forms 2106, Employee Business Expenses, one for Mr. Pokawa and one for Ms. Fatoma.  Mr. Pokawa's 2013 Form 2106 reported unreimbursed employee business expenses of $8,089, comprising vehicle expenses, parking fees and tolls, travel expenses while away from home, other business expenses, and meals and entertainment.[6]  Ms. Fatoma's 2013 Form 2106 reported unreimbursed employee business expenses of $5,217, comprising vehicle expenses, parking fees and tolls, other business expenses, and meals and entertainment.  The 2013 Schedule A included an additional $7,585 that was not reported on the 2013 Forms 2106.  Petitioners attached to their 2014 return a single Form 2106 for Ms. Fatoma which reported unreimbursed employee business expenses of $5,238, comprising vehicle expenses, parking fees and tolls, other business expenses, and meals and entertainment.  The 2014 Schedule A included an additional $4,440 that was not reported on Ms. Fatoma's 2014 Form 2106.

---

[6]The amounts of the reported expenses for meals and entertainment on petitioners' Forms 2106 were calculated by applying the 50% limitation prescribed by sec. 274(n).

**[*8]** <u>Dependency Exemption Deductions</u>

Petitioners claimed two dependency exemption deductions for both 2013 and 2014. They claimed one of Mr. Pokawa's parents as a dependent for each year. They also claimed H.J. as a dependent for 2013 and A.P. as a dependent for 2014.

<u>Education Credits</u>

On Forms 8863, Education Credits (American Opportunity and Lifetime Learning Credits), attached to their 2013 and 2014 returns, petitioners claimed the refundable American Opportunity Credit of $1,000 for each year. The 2013 Form 8863 reported that Mr. Pokawa attended "Kaplan Financial Education" in La Crosse, Wisconsin, and the 2014 Form 8863 reported that he attended "Dallas County Community College".

<u>Distributions From Retirement Plan</u>

Petitioners' 2013 Form 1040 included in gross income an early distribution of $83,480; the attached Form 5329, Additional Taxes on Qualified Plans (Including IRAs) and Other Tax-Favored Accounts, indicated exception No. 12 ("Other") and additional tax of $8. Petitioners' 2014 Form 1040 included in gross income an early distribution of $12,448; the attached Form 5329 indicated

[*9] exception No. 7 ("IRA distributions made to certain unemployed individuals for health insurance premiums") and additional tax of $1.

Notice of Deficiency

For 2013 respondent disallowed all of petitioners' claimed Schedule C deductions for 1st Class Tax Services, United Banquet Hall, and Sierra Outreach Center. For 2014 respondent disallowed all their claimed Schedule C deductions for 1st Class Tax Services and Sierra Outreach Center and $6,439 of the Schedule C deductions for car and truck expenses for the Uber driving business. Respondent also disallowed the dependency exemption deductions for Mr. Pokawa's children and the refundable education credits for lack of substantiation. Respondent disallowed Schedule A mortgage interest deductions of $2,001 for 2013 and $2,672 for 2014 on the grounds that these deductions were not "verified or determined to be reasonable based on all available information." Respondent disallowed all of petitioners' claimed unreimbursed employee business expense deductions. Respondent also determined that petitioners were liable for the section 72(t) additional tax on early distributions from a qualified retirement plan and for section 6662(a) accuracy-related penalties.

**[\*10]**                                    OPINION

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

Pursuant to section 7491(a)(1), the burden of proof as to factual matters may shift from the taxpayer to the Commissioner under certain circumstances. Petitioners did not allege that section 7491 shifts the burden of proof to respondent, nor does the record establish that petitioners satisfy the prerequisites under section 7491 for any such burden shift.

Deductions are allowed as a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any claimed deduction.  Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).  This burden requires the taxpayer to substantiate expenses for deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability.  Sec. 6001; <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 89-90 (1975), <u>aff'd per curiam</u>, 540 F.2d 821 (5th Cir. 1976); <u>Meneguzzo v. Commissioner</u>, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), (e), Income Tax Regs.

[*11]  Section 162(a) allows a deduction for ordinary and necessary business expenses paid or incurred during the taxable year in carrying on any trade or business.  An expense is ordinary if it is a common or frequent occurrence in the type of business involved.  Deputy v. du Pont, 308 U.S. 488, 494-495 (1940).  An expense is necessary if it is appropriate and helpful to the taxpayer's business.  Commissioner v. Heininger, 320 U.S. 467, 471 (1943).

If a taxpayer establishes that a deductible expense has been paid but is unable to substantiate the precise amount, we generally may estimate the amount of the deductible expense, bearing heavily against the taxpayer responsible for the inexactitude.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  We cannot estimate deductible expenses, however, unless the taxpayer presents evidence providing a sufficient basis for making an estimate.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  Without such basis, any allowance would amount to unguided largesse.  Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

I.    Schedules C

Respondent disallowed all of petitioners' claimed Schedule C deductions relating to 1st Class Tax Services, Sierra Outreach Center, and United Banquet Hall and a large part of their claimed Schedule C deductions for the Uber driving

[*12] business.  Respondent has not disputed that these various activities represented bona fide trades or businesses but has based his disallowance of the claimed deductions on petitioners' failure to establish that these amounts were paid or incurred during the relevant taxable year as ordinary and necessary business expenses.

The documentary evidence petitioners provided to substantiate the expenses underlying the claimed Schedule C deductions is scant.[7]  Mr. Pokawa testified that in 2014 the building in which he kept most of his tax records flooded, destroying his documents.

If a taxpayer's records are lost or destroyed through circumstances beyond his or her control, the taxpayer may substantiate expenses through reasonable reconstruction.  See Malinowski v. Commissioner, 71 T.C. 1120, 1124-1125 (1979).  The burden is on the taxpayer to show that the documents were actually destroyed because of circumstances beyond his or her control.  See Adler v. Commissioner, T.C. Memo. 2010-47, aff'd, 443 F. App'x 736 (3d Cir. 2011).

_____

[7]At trial the Court sustained respondent's objections to certain documents on the grounds that the documents had not been exchanged pursuant to the Court's standing pretrial order of November 28, 2016, were incomplete, or summarized documents that were not also offered as evidence.  Even if these proffered documents had been admitted, they would do very little to assist petitioners' case; in fact, several of the receipts appear to be for a business called "Sierra Autos" for which no Schedules C were included with the returns for 2013 and 2014.

[*13] The circumstances surrounding Mr. Pokawa's assertion of a flood are vague, and petitioners have offered no evidence, apart from this testimony, that their tax records were destroyed in a flood. It remains unclear why petitioners could not have reconstructed, in a timely manner, at least some of their records by obtaining bank records and contacting third-party payees, such as property managers and insurance and utility companies. Indeed, Mr. Pokawa testified that just one week before trial he hired "a taskmaster approved to help * * * [him] put * * * [his] documents together". Moreover, petitioners have failed to explain the dearth of records for the period after the alleged flood.

Nevertheless, after carefully reviewing petitioners' scant documentation, which includes portions of a lease agreement, some utility bills, and carbon copies of checks for rent payments, along with Mr. Pokawa's testimony, and bearing heavily against petitioners, whose inexactitude is of their own making, we are satisfied that there is a sufficient evidentiary basis to permit us to estimate the following amounts of deductible expenses: (1) rent as claimed on the 2013 Schedule C for Sierra Outreach Center; (2) utilities of $1,050 for the 2013 Schedule C for Sierra Outreach Center; (3) rent as claimed on the 2014 Schedule C for Sierra Outreach Center; and (4) utilities as claimed on the 2014

[*14] Schedule C for Sierra Outreach Center.[8]  See Cohan v. Commissioner, 39 F.2d 540.

Petitioners produced no evidence to substantiate the remaining Schedule C expenses for which respondent disallowed deductions for 2013 and 2014 or to provide us any basis for estimating any such deductible expenses.[9]  Accordingly, we sustain respondent's determinations regarding the remaining Schedule C expenses not discussed above.

---

[8]Petitioners produced evidence that Sierra Outreach Center occupied and paid rent for a building on Broadway Boulevard until October 2013, at which time it moved to an address on National Drive, where it remained through 2014.  The evidence permits us to conclude that petitioners have substantiated the rent deductions claimed with respect to Sierra Outreach Center on their 2013 and 2014 returns.  Petitioners also produced utility bills for the National Drive address showing an average utility expense of $350 per month.  The evidence permits us to conclude that petitioners have substantiated utilities expenses for Sierra Outreach Center as deducted on their 2014 return and, for their 2013 taxable year, three additional months of those utilities expenses, at $350 per month, for October, November, and December 2013.  The record contains no evidence whereby we might estimate any utility expenses incurred at the Broadway Boulevard address.

[9]The limited evidence in the record also makes us think that even if petitioners had substantiated the expenses reported for United Banquet Hall and the Uber driving business--which they have not--any such expenses would have constituted nondeductible startup expenses or possibly, in the case of certain amounts claimed for the Uber driving business, capital expenditures.  See secs. 179, 195, 263.

[*15] II.     Schedule A Deductions

A.     Mortgage Interest and Points

At trial petitioners made no argument and provided no substantiation for the portion of the mortgage interest deduction that respondent disallowed.  Petitioners have not established entitlement to mortgage interest deductions greater than respondent allowed in the notice of deficiency.

B.     Unreimbursed Employee Business Expenses

Petitioners claimed, and respondent disallowed, unreimbursed employee business expense deductions of $20,891 for 2013 and $9,678 for 2014.

The performance of services as an employee is considered a trade or business.  Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970).  An employee business expense is not ordinary and necessary, however, if the employee is entitled to reimbursement from his or her employer.  See Podems v. Commissioner, 24 T.C. 21, 22-23 (1955); Noz v. Commissioner, T.C. Memo. 2012-272, at *22.  Furthermore, personal, living, or family expenses are generally not deductible.  Sec. 262(a).

At trial petitioners made no argument and provided no substantiation for the unreimbursed employee business expenses.  They have not established that the reported expenses were incurred or, if incurred, were not reimbursed by their

[*16] employers. Consequently, we sustain respondent's determination that petitioners are not entitled to deductions for unreimbursed employee business expenses for 2013 and 2014.

III.    Dependency Exemption Deduction for Qualifying Child

An individual is allowed a deduction for an exemption for "each individual who is a dependent (as defined in section 152) of the taxpayer for the taxable year." Sec. 151(c). Section 152(a) defines a "dependent" to include a "qualifying child". Generally, a "qualifying child" must: (1) bear a specified relationship to the taxpayer; (2) have the same principal place of abode as the taxpayer for more than one-half of the taxable year; (3) meet certain age requirements; (4) not have provided over one-half of his or her own support for the year at issue; and (5) not have filed a joint return (other than a claim for refund) with a spouse for the taxable year. Sec. 152(c)(1).

The notice of deficiency included an adjustment for "Dependent Children--Live with Taxpayer", explaining: "We disallowed the amount shown on your return because we did not receive an answer to our request for supporting information. To be allowed a deduction, expense, exemption, credit, or other tax

[*17] benefit, you must establish that you have met all requirements of the law."[10] Respondent's answer and pretrial memorandum provided no further clarification or explanation of the grounds upon which the dependency exemption deductions were disallowed. Respondent appears to dispute whether Mr. Pokawa and his children had the same principal place of abode for more than one-half of the taxable year.

Mr. Pokawa has two children: a daughter, H.J., born in 1996, and a son, A.P., born in 2002. In 2013 H.J. resided with petitioners for the entire year. In 2014 A.P. resided with petitioners for the entire year. Mr. Pokawa explained that this living arrangement was dictated by the family members' preferences. We are satisfied that Mr. Pokawa's daughter and son each satisfy the relationship requirement and the principal place of abode requirement.

To be a qualifying child, an individual must not have attained age 19 as of the close of the calendar year in which the taxpayer's taxable year begins or else be a student who has not attained age 24 during that same year. Sec. 152(c)(1)(C), (3)(A). In 2013 H.J. turned 17, and in 2014 A.P. turned 12. Accordingly, each child met the age requirement for the year for which he or she was claimed as a

---

[10]A similar explanation was included in the notice of deficiency for most of the proposed adjustments.

**[*18]** qualifying child. Respondent has not expressly contended and nothing in the record suggests that H.J. or A.P. provided more than one-half of his or her own support for the years at issue or that H.J. or A.P. filed a joint return with a spouse for the years at issue.

In sum, we conclude and hold that H.J. was a "qualifying child" for petitioners' 2013 tax year and A.P. was a "qualifying child" for their 2014 tax year; consequently, petitioners are entitled to the disputed dependency exemption deductions for 2013 and 2014.

IV. Education Credits

The American Opportunity Credit is a modified version of the Hope Scholarship Credit. Sec. 25A(i). The American Opportunity Credit provides for a credit against tax equal to "(A) 100 percent of so much of the qualified tuition and related expenses paid by the taxpayer during the taxable year * * * as does not exceed $2,000, plus (B) 25 percent of such expenses so paid as exceeds $2,000 but does not exceed $4,000." Sec. 25A(i)(1). The credit phases out for a taxpayer whose modified adjusted gross income exceeds $80,000, or $160,000 for married taxpayers filing joint returns. Sec. 25A(i)(4). In addition, up to 40% of this credit may be refundable. Sec. 25A(i)(5).

**[\*19]** Petitioners claimed, and respondent disallowed, the American Opportunity Credit for 2013 and 2014. Petitioners introduced no evidence tending to show that they were eligible for this credit for 2013 or 2014. They produced no records of tuition payments or educational expenses related to Mr. Pokawa's claimed educational activities. Petitioners have not met their burden of proving entitlement to the American Opportunity Credits. Accordingly, we sustain respondent's disallowance of the credits.

## V.  Section 72(t) Additional Tax

Generally, section 72(t)(1) imposes an additional tax on an early distribution from a qualified retirement plan equal to 10% of the portion of the distribution that is includible in gross income. The additional tax is intended to discourage taxpayers from taking premature distributions from retirement plans. Dwyer v. Commissioner, 106 T.C. 337, 340 (1996); see also S. Rept. No. 93-383, at 134 (1974), 1974-3 C.B. (Supp.) 80, 213. The additional tax under section 72(t) does not apply to certain distributions from qualified retirement plans, including distributions:  (1) to an employee age 59-1/2 or older or (2) to unemployed individuals for health insurance premiums. Sec. 72(t)(2)(A)(i), (D). There is no exception under section 72(t) for financial hardship. See Arnold v. Commissioner,

[*20] 111 T.C. 250, 255 (1998); Gallagher v. Commissioner, T.C. Memo. 2001-34; Deal v. Commissioner, T.C. Memo. 1999-352.

Petitioners do not dispute that the distributions in 2013 and 2014 of $83,480 and $12,448, respectively, were early distributions from a qualified retirement plan. Indeed, they properly included the distributions in gross income for both 2013 and 2014. On Forms 5329 petitioners indicated exception No. 12 for "Other" without further explanation for 2013 and exception No. 7 for "IRA distributions made to unemployed individuals for health insurance premiums" for 2014. Mr. Pokawa testified that he "spent all the money * * * [he] was able to get from * * * [his] 401(k) or retirement" on his various business ventures. Petitioners produced no evidence to show that they meet any of the exceptions under section 72(t)(2). Accordingly, we sustain respondent's determination that petitioners are liable for the section 72(t) additional tax for 2013 and 2014.

VI.    Section 6662(a) Penalties

Respondent determined that for each year at issue petitioners are liable for a 20% accuracy-related penalty pursuant to section 6662(a) and (b)(1) and (2) for an underpayment attributable to negligence or a substantial understatement of income tax. Respondent bears the burden of production with respect to this penalty. See sec. 7491(c). To meet this burden, respondent must produce evidence establishing

**[\*21]** that it is appropriate to impose this penalty. Once respondent has done so, the burden of proof is upon petitioners to show that they are not liable for the penalty. See Higbee v. Commissioner, 116 T.C. 438, 449 (2001).

Negligence includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws and is the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances. Sec. 6662(c); Neely v. Commissioner, 85 T.C. 934, 947 (1985); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. Petitioners exhibited a lack of due care in failing to keep adequate books and records and in failing to properly substantiate expenses underlying claimed deductions and credits. Respondent has carried his burden of production with respect to the section 6662(a) penalty for negligence.

Section 6662(a) and (b)(2) imposes the accuracy-related penalty on any portion of a tax underpayment that is attributable to any substantial understatement of income tax, defined in section 6662(d)(1)(A) as an understatement that exceeds the greater of 10% of the tax required to be shown on the return or $5,000. The exact amounts of petitioners' underpayments will depend upon the Rule 155 computations, in accordance with our findings and conclusions. To the extent that

**[\*22]** those computations establish that petitioners have substantial understatements of income tax, respondent has also met his burden of production in this regard.  See Prince v. Commissioner, T.C. Memo. 2003-247.

The accuracy-related penalty does not apply with respect to any portion of an underpayment if the taxpayer acted with reasonable cause and in good faith with regard to that portion.  Sec. 6664(c)(1).  That determination is made case by case, depending on the facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Those circumstances include the experience, knowledge, and education of the taxpayer.  Id.  Petitioners have made no attempt to establish reasonable cause and good faith.  Moreover, Mr. Pokawa, despite having a tax return preparation business, failed to keep adequate books and records and to properly substantiate expenses underlying claimed deductions and credits.

Accordingly, we sustain respondent's determination that petitioners are liable for the section 6662(a) penalties for 2013 and 2014 for negligence and, alternatively, for substantial understatements of income tax insofar as the Rule 155 computations show substantial understatements.

**[\*23]**  To reflect the foregoing,

Decision will be entered under

Rule 155.